MINNIE PREE, Respondent, v. BOARD OF TRUSTEES OF THE FIREMEN'S RETIREMENT SYSTEM OF THE CITY OF ST. LOUIS, MISSOURI, Appellant, No. 43075—257 S. W. (2d) 685.

Division Two, April 13, 1953.

Motion for Rehearing or to Transfer to Banc Overruled, May 11, 1953.

*James E. Crowe,* City Counselor, and *Charles J. Dolan,* Associate City Counselor, for appellant.

*Michael J. Doherty* and *George W. Curran* for respondent.

 TIPTON, J.—The respondent is the widow of John B. Pree who had been a member of the fire department of the city of St. Louis and who retired on January 8, 1951, at the age of 60 years. Since he was a member of the Firemen's Retirement System of St. Louis he was entitled to certain benefits of its pension plan. The appellant had determined that he was entitled to the sum of $14,053 on the date of his retirement, under the option he had elected to accept. He died on January 15, 1951. Respondent, who had been designated as his beneficiary in the event of his death, presented this claim to appellant, which was denied because **[686]** he died within 30 days after his retirement. Appellant's decision was based upon its construction of section 34 of the ordinance that created the Firemen's Retirement System. In a certiorari proceedings in the circuit court of the city of St. Louis, the action of appellant was reversed and the appellant was ordered to pay $14,053 with interest to respondent. From this judgment the appellant has duly appealed.

The facts in this proceedings are not in dispute and we will adopt the findings of the trial court. They are as follows:

"That the Relatrix [respondent] is the widow of John B. Pree, a retired fireman. Pree was born on the 8th day of January in the

year 1891. He became a member of the Fire Department of the City of St. Louis on the 1st day of March in the year 1918. He became a member of the Firemen's Retirement System of St. Louis, Missouri, on the 1st day of September in the year 1944. From September 1, 1944, until September 16, 1945, there was withheld each month from his salary as fireman, a sum in the amount of 6.39% of his salary, which sum was paid by the City of St. Louis into an annuity fund of the Retirement System and credited to the account of the said John B. Pree.

"From January 15, 1945, to January 3, 1951, there was withheld from his monthly salary a sum in the amount of 7.36%, which was paid into the annuity fund of the Retirement System and credited to the account of the said John B. Pree. The total amount so contributed from September 1, 1944, to January 1, 1951, was $1,358.50. Prior to September 1, 1944, the said John B. Pree had been a member of the Firemen's Pension Fund, to which he had contributed the sum of $606.00, which sum had been deducted from his monthly pay as an assessment. A prior service certificate was issued to Pree acknowledging said service.

"On the 20th day of December, 1950, the said John B. Pree made formal application in writing to the Board of Trustees of the Firemen's Retirement System of St. Louis for service retirement, in which he stated that the last day upon which he would receive compensation from the St. Louis Fire Department would be January 3, 1951, and in which he requested that his service retirement allowance become effective on the 8th day of January, 1951.

"In the month of December, 1950 (day unspecified) the said John B. Pree filed with the Firemen's Retirement System of St. Louis, in writing, his election to take his retirement allowance under Option 1 of the law governing the operation of the Retirement System.

"On December 27, 1950, the Board of Trustees of the Firemen's Retirement System approved the application of the said John B. Pree for retirement, effective on January 8, 1951.

"On January 15, 1951, the said John B. Pree died. Prior to his death the said John B. Pree had nominated his wife, Minnie Pree, by written designation duly acknowledged and filed with the Board of Trustees, as the person to receive the present value of his retirement allowance under Option 1.

"It has been determined by the actuary of the Retirement System that the value of the retirement allowance of the said John B. Pree at the time of his retirement was $14,053.00.

"Relatrix duly filed her claim and proof of death. Notice of claim and proof was duly served upon all interested parties.

"The Board heard and considered Relatrix claim on April 25, 1951 and denied the same on the same date.

"Relatrix duly filed her petition for Review in this Court as by law provided, Art. V., Sec. 22, Constitution 1945 Mo. R. S. A.

"No payments on account of the retirement allowance have been offered to or received by the Relatrix."

Under authority of sections 86.480 to 86.630 of RSMo 1949 (enacted by the 62nd General Assembly and approved July 30, 1943), the city of St. Louis, by its ordinance No. 43009, approved June 26, 1944, created and established the Firemen's Retirement System of St. Louis. The language used in the several sections and subsections of the statutes and ordinance is similar.

 The legislative intent as expressed both by the act of 1943 and the ordinance creating the Firemen's Retirement System was to provide a voluntary pension system for the members of the city fire department and their widows and orphans. A fireman was entitled to a pension when he had reached the age of 60, had 20 years of service or became disabled in service. It also provided for the widows and minor children of firemen who died in service. The retirement allowance to be paid a retired fireman who was 60 years old was derived from an annuity that was the actuarial equivalent of his accumulated contributions, and in addition thereto, a pension equal to one-one hundred fortieth of his average final compensation multiplied by the number of years he was in the service. If he had been in a pension system that was in existence prior to the creation of the Firemen's Retirement System of St. Louis, he was given a prior service certificate, and that entitled the retired fireman to one-seventieth of his average final compensation multiplied by the number of years of service as stated in his prior service certificate.

There were other methods of arriving at a pension due a retired fireman, depending on the reason for the retirement. It will serve no useful purpose to explain the various methods used in determining the amount of the pensions paid the retired firemen as it is conceded by appellant that if respondent's husband had lived 30 days after the date of his retirement, his pension would amount to $14,053.

The sole issue before us depends upon the proper interpretation of section 34 of this ordinance. It reads:

"Section Thirty-Four. With the provision that no optional selection shall be effective in case a beneficiary dies within thirty days after retirement, in which event such a beneficiary shall be considered as an active member at the time of his death; until the first payment on account of any benefit becomes normally due any beneficiary may elect to receive his benefit in a retirement allowance payable throughout life or he may elect to receive the actuarial equivalent at that time of his retirement allowance in a lesser retirement allowance payable throughout life, with the provision that:

"Option 1. If he dies before he has received in payments the present value of his retirement allowance as it was at the time of

his retirement, the balance shall be paid to his legal representatives or to such person as he shall nominate by written designation duly acknowledged and filed with the Board of Trustees.''

We will not quote options 2, 3 and 4 as they are not involved in this case.

It is to be noted that this section applies to the various ways the ordinance provides for the retirement of a fireman who is entitled to a pension. When a fireman has reached the age of 60, he is permitted by sections 19, 22 and 24 of the ordinance to retire at that age. However, appellant contends that if he wants to exercise his option provided by section 34, supra, he must be 60 years and 30 days old. The trial court held that there was a conflict between sections 19, 22 and 24, supra, and section 34, supra, and in his conclusion of law said:

"Subsection (11) of Sec. 6, 718 (Sec. 86.553 R. S. Mo. 1949; Sec. 34 Ord. 43009) in general terms, applicable to all pensioners, provides for optional selections of retirement benefits. The first clause sets forth a condition that no optional selection shall be effective in case a beneficiary dies within thirty days after retirement. By excluding the possibility of a member retiring at the age of 60 years said provisory clause is in conflict with the specific provisions of the act set forth above and is invalid and of no effect in determining the retirement benefits of a member who has attained the age of 60 years."

There is an apparent conflict between these sections of the ordinance in question.

"It is a cardinal rule of construction that every word, clause, sentence and section of an act must be given some meaning unless it is in conflict with the legislative intent. State v. Wipke et al., Mo. Sup., 133 S. W. 2d 354; State ex rel. Kansas City Power & Light Co. v. Smith, 342 Mo. 75, 111 S. W. 2d 513; Holder v. Elms Hotel [688] Co., 338 Mo. 857, 92 S. W. 2d 620, 104 A.L.R. 339. 'It is the duty of the court, in construing statutes which appear to be in conflict, to reconcile them, if possible, with the general legislative purpose.' Dysart v. City of St. Louis, 321 Mo. 514, 11 S. W. 2d 1045, loc. cit. 1050, 62 A.L.R. 762.'' State ex rel. McKittrick v. Carolene Products Co., 346 Mo. 1049, 144 S. W. 2d 153, l.c. 155-156. See, also, State ex rel. St. Louis Public Service Co. v. Public Service Commission, 326 Mo. 1169, 34 S. W. 2d 486; Holder v. Elms Hotel Co., 338 Mo. 857, 92 S. W. 2d 620, 104 A.L.R. 339; State ex rel. St. Louis Die Casting Corp. v. Morris, 358 Mo. 1170, 219 S. W. 2d 359; State ex inf. Kamp, ex rel. Rodgers v. Pretended Consolidated School District No. 1 of Montgomery Co., 359 Mo. 639, 223 S. W. 2d 484. With these rules of construction in mind, we believe the apparent conflict between the above sections can be reconciled when all the sections providing for various conditions that will entitle a member of the city

fire department, his widow and dependents, to a pension are read together.

As previously stated, section 19 provides that a member of the department "who has attained the age of sixty shall receive a service retirement allowance which shall consist of: * * *."

Section 22 provides that "upon retirement for ordinary disability a member shall receive a service retirement allowance if he has attained age sixty, otherwise he shall receive an ordinary disability retirement allowance * * *."

Section 24 is similar to section 22 but it applies where there is an accidental disability of a member of the department.

There is no provision made for a widow and minor children to receive a pension after the retired member dies except under sections 30 and 32. Under section 30, provision is made for a pension for the widow and minor children of a retired member who dies from injuries or disease contracted while serving as a member of the department, and under section 32 a provision is made for "any widow of a fireman whose death was the natural and proximate result of an accident occurring at some definite time and place while he was in the actual performance of duty * * *."

These sections make no provisions for a widow or dependents of a retired member who dies from natural causes or an accident sustained after he retires except under section 34.

Section 34 gives the member who wants to retire an option to receive his benefits during his natural life or "he may elect to receive the actuarial equivalent at that time of his retirement allowance in a lesser retirement allowance payable throughout life, with the provision that:" then this section provides for four options the member may make disposing of the amount of the retirement allowance due at his death. (We have already quoted option 1 which respondent's husband had duly elected to take prior to his death and it is not necessary to quote the other three options.) Under this section, a member may make his election at a time prior to "the first payment on account of any benefit becomes normally due any beneficiary," which, in the normal course of business, would be 30 days. Therefore, if the retired fireman has made his election and it has been approved within the 30 day period after his retirement, his election is valid on the date it is approved. This is so even if the retired fireman dies within that 30 day period after his retirement because there is nothing further to be done to complete his election. But if the member dies within 30 days and has not made his election, then the widow and minor children are provided for by section 29 because in that event, under section 34, he is still presumed to be an active member at the time of his death. Section 29 provides a pension to the widow and children under 16 years of age upon the death of a member in active service.

This construction not only gives meaning to every phrase, sentence and paragraph of this ordinance, but it also reconciles the apparent conflict between the sections already mentioned. Moreover, under this construction of the ordinance, a complete system is provided to take care of a member of the department, and also his widow [689] and minor children, under every possible contingency that might arise when he is entitled to retire. That is certainly the legislative intent of the act of 1943 and of the ordinance in question.

In the case at bar, the option made by deceased was completed and approved by appellant before his death. The judgment of the trial court was for the right party and is, therefore, affirmed. All concur.