ASARCO, INCORPORATED,
Respondent,

v.

Robert H. McHENRY,
Collector, Defendant,

South Iron School District
R–1, Appellant.

No. 65965.

Supreme Court of Missouri,
En Banc.

Nov. 20, 1984.

Joseph J. Russell, Cape Girardeau, for appellant.

William R. Edgar, Ironton, James D. Edgar, Webster Groves, for respondent.

BILLINGS, Judge.

■ Suit to recover property taxes paid to Iron County under protest. ASARCO filed suit pursuant to § 139.031, RSMo 1978, claiming appellant failed to comply with Missouri's rollback provision, Section 137.073, RSMo 1978 (the relevant section is in the 1978 Code rather than the 1979 amendment). Trial court entered a judgment for ASARCO. Because this appeal involves the construction of a state revenue law, this Court has jurisdiction. Mo. Const. art. V, § 3, 1945. We reverse.

Facts are stipulated.

This suit arose because of a 12.5% increase in the total assessed valuation of locally assessed property in Iron County. In 1978 the figure was $58,306,274.00, and in 1979 it was $65,580,285.00. South Iron School District R–1, a multiple county district, levied a tax rate of $3.70 per hundred in both years.

Before the School District considered its 1979 rate of levy, the County Clerks of the three counties with property in the district each certified to the district the 1979 total assessed valuation of locally assessed property in the district. The combined total was $9,908,467.00. The 1978 combined total was $8,687,023.00. The district considered the 1979 rate at its July 9, 1979 meeting. The estimate of required funds for the 1979–81 school year was certified to the county clerks prior to the July 15 deadline, § 164.011, RSMo 1978. A proposed levy of $3.70 per hundred was calculated, based on the 1979 assessed valuation, to satisfy an estimated need of $366,613.00. In December 1979 ASARCO paid taxes but protested $.45 per hundred of the rate of levy as constituting a windfall for the taxing authority. An election was held, on November 6, 1979, after the rate of levy was set. A majority of voters approved a $.31 per hundred increase in the levy. The parties contest the meaning of this increase.

■ On June 9, 1983, the trial court entered a judgment in favor of ASARCO. Because appellant used the 1979 increased assessed valuation, rather than the 1978 assessed valuation, to determine its rate of levy for the 1979–80 school year, we hold § 137.073, RSMo 1978, inapplicable.

■ Section 137.073, RSMo 1978, was adopted to prevent windfalls to taxing authorities simply because of increases in assessed valuations of locally assessed property. *Missouri Pacific R.R. Co. v. Kuehle,* 482 S.W.2d 505, 509 (Mo.1972). It was designed to protect taxpayers from hardships caused exclusively by the above mentioned increases. *Missouri Pacific R.R. Co. v. Campbell,* 502 S.W.2d 354, 358 (Mo. 1973). The statute must be construed strictly, in favor of the taxpayer and against the taxing authority. *Id.* Conversely, when an increase in assessed valuation is not the cause of an increase in property taxes the statute's intent is not violated and its protections are not invoked. In the instant case the increase in property taxes was caused by the district's increase in its estimate of need;[1] it was not caused by an increase in the assessed valuation.

---

1. Assume the district needs to set the rate of levy for year 2. In order to decide how much

■ This case involves two statutes.[2] We have reviewed previous cases,[3] and we find the instant situation a matter of first impression. The rollback statute only pre-

tax to impose, it must consider: (1) the assessed valuation; (2) the amount of money the district needs, and (3) the rate of levy. *Southwestern Bell Telephone Co. v. Hogg,* 569 S.W.2d 195, 199 (Mo. banc 1978). "The rate of levy is always the last factor to be determined, and to be obtained as a quotient, the assessed valuation being the divisor and the amount of taxes the dividend." *Id.* The district would generally use the assessed valuation of year 1. They would independently estimate their financial need for year 2. Using the year 1 assessed valuation and the year 2 estimate of need, a year 2 rate of levy is set. If the assessed valuation for year 2 is greater than the assessed valuation for year 1, by 10% or more, the rate of levy must be re-adjusted, using the year 2 assessed valuation. This avoids a windfall for the district. The readjustment is *only* needed if the district originally used the assessed valuation of year 1.

2. The school budgeting provision, § 164.011, RSMo 1978, reads:

**Annual estimate of required funds, tax rate required—estimates, where sent, when due.** —1. The school board of each district annually shall prepare an estimate of the amount of money to be raised by taxation for the ensuing school year, the rate required to produce the amount, and the rate necessary to sustain the school or schools of the district for the ensuing school year, to meet principal and interest payments on the bonded debt of the district and to provide the funds to meet other legitimate district purposes. In preparing the estimate the board shall have sole authority in determining what part of the total authorized rate shall be used to provide revenue for each of the funds as authorized by section 165.011, RSMo 1969.

2. The school board of each district under the supervision of the county superintendent shall forward the estimate to the county superintendent on or before the fifteenth day of May. The school board in all other districts shall forward the estimate to the county clerk on or before the fifteenth day of July. In school districts divided by county lines the estimate shall be forwarded to the proper officer of each county in which any part of the district lies.

The rollback provision, § 137.073, RSMo 1978, reads:

**Readjustment of prior levy when county assessment increased ten percent.** —Whenever the assessed valuation of real or personal property within the county has been increased by ten percent or more over the prior year's valuation, either by an order of the state tax commission or by other action, and *such increase is made after the rate of levy has been determined and levied* by the county court,

city council, school board, township board or other bodies legally authorized to make levies, and certified to the county clerk, then such taxing authorities shall immediately revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy. Where the taxing authority is a school district it shall only be required hereby to revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy, plus such additional amounts as may be necessary approximately to offset said district's reduction in the apportionment of state school moneys due to its increased valuation. The lower rate of levy shall then be recertified to the county clerk and extended upon the tax books for the current year. The term **"rate of levy"** as used herein shall include not only those rates the taxing authorities shall be authorized to levy without a vote, but also those rates which have been or may be authorized by elections for additional or special purposes. No levy for public schools or libraries shall be reduced below a point that would entitle them to participate in state funds. (our emphasis)

3. We find two situations in which a school district can be aware of an increase in the assessed valuation of locally assessed property and still be subject to § 137.073. First, the district files an estimate of need ostensibly based on the lower assessment but actually based on the increased one. We refuse to endorse this procedure. It undermines the credibility of an estimate of need; it often relies on tentative assessments, thereby creating taxation based on guess work; and it is subject to manipulation by forcing consideration of post hoc justifications. *See Missouri Pacific R.R. v. Jones,* 544 S.W.2d 541 (Mo.1976); *Southwestern Bell Telephone Co. v. Feuerstein,* 529 S.W.2d 371 (Mo.1975); *Missouri Pacific R.R. v. Campbell,* 502 S.W.2d 354 (Mo. 1973) (The districts should not be permitted to repudiate the amount of their needs as stated in their official estimates and to now state that their estimates were intentionally incorrect and based upon information not recognized by the various statutes involved. Such a procedure would not only be a violation of those statutes but would tend to emasculate the specific reduction provision of § 137.073 and place its enforcement on a tenuous and speculative basis. *Id.* at 359.) Second, if an increased assessment is known but ignored, the knowledge alone cannot be used to avoid a rollback. The school district would still experience the windfall prohibited under the statute. *See Southwestern Bell Telephone Co. v. Hogg,* 569 S.W.2d 195 (Mo. banc 1978).

vents windfalls to taxing authorities. A windfall occurs when a taxing authority collects more money than it needs. This can be easily tested. The correct valuation figure multiplied by the rate of levy will yield the amount of money raised. This must be substantially the same as the estimate of need. When this formula is applied to the 1979 School District taxation presently at issue, it proves no windfall existed. The 1979 total valuation, $9,908,467.00, multiplied by the 1979 rate of levy, $.037, yields the amount of money the School District raised for the 1979–80 school year, $366,613.28. This is almost identical to their estimate of need.[4] Because there was no difference between what was needed and what was collected, there was no windfall, and there was no need for a rollback. This situation was suggested in *Southwestern Bell Telephone Co. v. Mitchell,* 631 S.W.2d 31, 37 n. 10 (Mo. banc 1982), and the instant result was implied.[5]

■ ASARCO suggests the district improperly estimated its needs. It claims the district set its rate of levy, determined the correct assessed valuation, and then calculated a need that justified the levy. ASARCO suggests this is evidenced by the fact the rate of levy did not change from 1978 to 1979. In *Mitchell, id.* at 36, we determined that "[s]ection 137.073 is not a vehicle to test the propriety or legality of a taxing authority's determination or procedure for determination of how much money it needs in order to operate." We decline the invitation to do what *Mitchell* prohibits.

■ ASARCO also suggests § 137.073, RSMo 1978, prohibits an increase in a district's estimate of need if there is a 10% or more increase in assessed valuation of locally assessed property. We disagree.

The key figure is the estimate of need. The rollback provision is a guarantee that the district does not raise substantially more money than it needs. If it needs more revenue than it did in a prior year, nothing in the language or intent of § 137.073, RSMo 1978, prevents a greater estimate of need.

The School District suggests any rollback should be offset by $.31 per hundred, the approved increase and $.105 per hundred, compensation for a reduction of *state* aid. Because we hold the rollback provision inapplicable to the instant situation, we do not reach these setoffs. It is unnecessary to evaluate the importance of the November election. It is also unnecessary to review the way the trial court awarded interest.

The judgment is reversed.

All concur.

---

**4.** This works because it reverses the procedure used to determine the rate of levy. The 1978 assessment would have yielded a $4.22 per hundred rate of levy. The 1979 total valuation, $9,908,457.00, multiplied by .0422 yields $418,137.31. This would require a rollback. By using the 1979 assessment, the School District avoided the need for the rollback.

**5.** "[I]f the valuation increase takes place prior to the setting of the original levy, then the first levy must be computed on the basis of the increased valuation or else the rate of levy must be revised on the basis of the increased valuation."