**Norvell and Eleanor SCHOLLE, Appellants,**

v.

**CARROLLTON R–VII SCHOOL DISTRICT, et al., Respondents.**

No. 70817

Supreme Court of Missouri, En Banc.

June 13, 1989.

James A. Rahm, Carrollton, for appellants.

Shirley Ward Keeler, Kansas City, for respondents.

ROBERTSON, Judge.

In 1985, the General Assembly amended Section 137.073, RSMo, to permit a political subdivision which revised its property tax levy as a result of general reassessment to recoup losses resulting from subsequent corrective reductions in property assessments. Section 137.073.4, RSMo 1986. Appellants challenge the constitutionality of recoupment provisions of the statute, urging that once the property tax levy is adjusted following equalization, Mo. Const. art. X, § 22(a) prohibits a political subdivision from adjusting its levy to recoup revenue lost as a result of subsequent corrective reductions in assessments. We have jurisdiction, Mo. Const. art. V, § 3 and find the statute constitutional. The judgment of the trial court is affirmed.

I.

On November 4, 1980, the voters of this state approved an amendment to the constitution designed, among other things, to limit the growth of revenues of government by increased taxation without direct voter approval.

> [P]olitical subdivisions are hereby prohibited ... from increasing the current levy of an existing tax ... above that current levy authorized by law ... when this section is adopted without the approval of the required majority of the qualified voters of that ... political subdivision voting thereon.

Mo. Const. art. X, § 22(a). Moreover, to the extent that the statewide reassessment of property provided a potential windfall to political subdivisions because of resulting higher assessed valuations of taxable property, the constitution commanded a rollback of the property tax levy.

> If the assessed valuation of property as finally equalized, excluding the value of new construction and improvement, increases by a larger percentage than the increase in the general price level for the previous year, the maximum authorized current levy applied thereto in each ... political subdivision shall be reduced to

yield the same gross revenue from existing property, adjusted for changes in the general price level, as could have been at the existing authorized levy on the prior assessed value.

*Id.*

Following the adoption of art. X, § 22(a), the General Assembly amended Section 137.073 to provide procedures for the revision of tax levies following general reassessment. *See* Section 137.073, RSMo Cum. Supp.1984.

The facts in this case are not in dispute. Appellants are owners of real property within the Carrollton R–VIII School District (the school district). In 1984, the voter approved property tax levy in the school district was $3.20 per $100.00 of assessed valuation. In that year, the school district levied a tax in that amount, less a reduction of $0.56 per $100.00 of assessed valuation based on receipts from Proposition C[1] plus a debt service levy of $0.50 per $100.00 of assessed valuation, the total levy being $3.14.

Following reassessment of the value of the property of the school district in 1985, the school district reduced its levy as required by art. X, § 22(a) and Section 137.073. The 1985 levy was calculated at $2.47, less a $0.60 reduction for Proposition C plus a $0.45 debt service levy for a total 1985 levy of $2.32 per $100.00 assessed valuation. However, after the 1985 levy had been certified and the 1985 tax bills mailed to the taxpayers, the school district received notice from the Missouri State Tax Commission that the valuations of certain properties within the school district had been lowered in a total amount of approximately $3,878,795.00. As a result, the school district returned $150,779.00 to taxpayers who had paid their taxes under protest and whose assessments were corrected by the State Tax Commission. The 1985 levy thus generated revenues which fell below revenues received under the 1984 levy.

In apparent response to the shortfall in revenues experienced by political subdivisions that adjusted their levies as required by art. X, § 22(a) prior to corrections in assessments by the State Tax Commission, the legislature again amended Section 137.073 to permit a recoupment of lost revenue.

(3) For a political subdivision revising a tax rate in a year of general reassessment which experiences a reduction in the amount of assessed valuation for that year, due to decisions of the state tax commission. . . .

(a) Such political subdivision may revise the tax rate ceiling for each purpose it levies taxes to compensate for the reduction in assessed value occurring after the political subdivision calculated the tax rate ceiling in the year of general reassessment, for purposes of taxes levied in the year following general reassessment and subsequent years. Such revision by the political subdivision shall be made at the time of the next calculation of the tax rate after the reduction in assessed valuation has been determined;

(b) In addition, only in the year following the reduction in assessed valuation as a result of circumstances defined in subdivision (3) of subsection 4 of this section, such political subdivision may levy a tax rate for each purpose it levies taxes above the tax rate ceiling adjustment provided in paragraph (a) of this subdivision to recoup any revenues it was entitled to receive for the prior year;

(c) Provided, any adjustments in tax rates and tax rate ceilings permitted by this subdivision shall not exceed a rate limit specified in statute or the constitution or levels previously approved by voters.

Section 137.037.4(3).

The school district had the corrected assessments from the State Tax Commission in hand when it prepared and set its 1986 levy. Had there been no need to recoup revenues lost in 1985 as a result of the levy

---

1. At the general election in November 2, 1982, the voters approved an initiative known as "Proposition C" which imposed a $0.01 sales tax dedicated to education. Under the provisions of Proposition C, the property tax levy must be reduced based on the sales tax revenue received. *See* Sections 144.701, 163.087 and 164.013, RSMo 1986.

being calculated on incorrect property assessments, the levy mandated by art. X, § 22(a) would have been $2.79 per $100.00 of assessed valuation. This levy, if imposed, would have resulted in approximately the same gross revenue to the school district as it received prior to reassessment. However, pursuant to Section 137.073.4(3), the school district set its 1986 levy at $3.11, less $0.61 (Proposition C revenue) plus a debt service levy of $0.27 for a total levy of $2.77 per $100.00 of assessed valuation. This levy permitted the school district to recoup revenues lost in 1985.

Appellants brought this action challenging the constitutionality of the school district's recoupment levy. The school district filed a motion for summary judgment. The trial court sustained the school district's motion for summary judgment. This direct appeal followed.

## II.

■ Appellant argues that once a property tax levy is reduced as a result of reassessment pursuant to art. X, § 22(a), that levy cannot be increased without voter approval. We disagree. Art. X, § 22(a) requires a reduction in the property tax levy *if* "the assessed valuation of property *as finally equalized,* ... increases by a larger percentage than the increase in the general price level from the previous year...." (Emphasis added.) Art. X, § 22(a). The purpose of the levy reduction is to eliminate a revenue windfall to government resulting from reassessment and to assure that the property tax levy will "yield the same gross revenue [after reassessment] from existing property ... as could have been collected at the existing authorized levy on the prior assessed value." *Id.*

The phrase "the assessed valuation of property as finally equalized" is found only in art. X, § 22(a) in this state; no definition of the phrase is provided. The phrase must be read as a whole and with a meaning consistent with the purpose of the tax and spending limit adopted by the voters in 1984. "[T]he assessed valuation of property as finally equalized" means the local assessment, as approved or changed and corrected through the statutory process of appeal and equalization. (Sections 137.275, 137.385, 138.390 and 138.430–.432, RSMo 1986).[2] This definition is consistent with the purpose of the tax and spending limit which seeks, among other things, to prevent *increases* in the effective rates of taxation, as measured by revenue generated, without voter approval. The definition we adopt gives effect to every word used in the phrase, *Pree v. Board of Trustees of Firemen's Retirement System of City of St. Louis,* 363 Mo. 1131, 257 S.W.2d 685 (1953), and reads the phrase *in pari materia* with constitutional and statutory provisions relating to the assessment and equalization of property. *Xerox Corporation v. Travers,* 529 S.W.2d 418 (Mo. banc 1975).

Appellant's argument is founded on the incorrect premise that the purpose of art. X, § 22(a) is to render a *reduction* in taxation. Further appellant's proposed reading of art. X, § 22(a) assigns no meaning to the word "finally" and fails to appreciate that property is neither truly assessed nor finally equalized until the taxpayer appeals permitted by statute are decided and any needed corrections made. We thus reject appellant's interpretation of art. X, § 22(a).

By its unambiguous language, the intention of art. X, § 22(a) is to require a property tax levy after reassessment which yields the same gross revenue for the political

**2.** Much of Missouri's tax and spending limitation amendment, popularly called the "Hancock Amendment," is taken from Michigan's Headlee Amendment (Mich. Const. art. 9, §§ 25, 31), which imposes nearly identical taxing restrictions on Michigan government. The phrase "the assessed valuation of property as finally equalized" is found verbatim in the Michigan Amendment. Nevertheless, that phrase applies with special force in Missouri. Aside from its application to the ongoing process of assess-

ment and equalization mandated annually by Section 138.390, at the time the voters adopted the Hancock Amendment, this Court had decided *State ex rel Cassilly v. Riney,* 576 S.W.2d 325 (Mo. banc 1979), which resulted in the State Tax Commission undertaking long-neglected statewide reassessment and equalization. Statewide reassessment was completed in 1984, Section 138.236, RSMo 1986, and was the impetus for the levy rollback in the school district in 1985.

subdivision as it received prior to reassessment. The constitution intends no windfall for either the taxing authority or the taxpayer. Section 137.073.4 does no more than permit the taxing authority to recoup revenue lost as a result of subsequent adjustments in the assessed valuation of property as finally equalized.

■ Art. X, § 24(b) provides that "the general assembly may enact laws implementing [the provisions of art. X, §§ 16–23] which are not inconsistent with the purposes of said sections." Section 137.073 serves the purposes of art. X, § 22(a). The taxpayers enjoy a direct benefit from the statute because it encourages taxing authorities to make the levy adjustments required by the constitution swiftly even though based on assessments which are subject to challenge and correction; the statute accomplishes this end by assuring those charged with governmental responsibility that revenues lost through a levy founded on incorrect assessments will not ultimately be lost. We hold, therefore, that Section 137.073.4 is consistent with the purposes of art. X, § 22(a) and bears no constitutional infirmity.

### III.

The judgment of the trial court is affirmed.

All concur.