The Honorable Tom McCarthy Senator, District 26 State Capitol Building, Room 331 Jefferson City, Missouri 65101
Dear Senator McCarthy:
This opinion letter is in response to your question asking:
 Will the Eureka Fire Protection District annual levy be subject to reassessment values, pursuant to Section 137.073 RSMo, computed upon the assessed valuations contained in a tax increment financing district established by the City of Eureka, Missouri, under Section 99.800, RSMo, et seq., thereby presenting the situation of the rollback of the fire protection district's levy for revenues it shall not receive?
We understand that your question relates to the Eureka Fire Protection District's concern that its annual property tax rate may be rolled back if there are increases in the assessed valuation of real property in the Eureka Tax Increment Financing District even though the Eureka Fire Protection District will not receive any of the revenue from those assessment increases.
Sections 99.845 and 99.855, RSMo, provide for the method in which real property is assessed and the funds are distributed in a tax increment financing district. Section 99.855, RSMo 1986, provides in pertinent part:
 99.855. Tax rates for districts containing redevelopment areas, method for establishing county assessor's duties — methods for extending taxes to terminate, when. — 1. If a municipality by ordinance provides for tax increment allocation financing pursuant to sections 99.845 and 99.850, the county assessor shall immediately thereafter determine the total equalized assessed value of all taxable real property within such redevelopment project area by adding together the most recently ascertained equalized assessed value of each taxable lot, block, tract, or parcel of real property within such project area, and shall certify such amount as the total initial equalized assessed value of the taxable real property within such project area.
 2. After the county assessor has certified the total initial equalized assessed value of the taxable real property in such redevelopment project area, then, in respect to every taxing district containing a redevelopment project area, the county clerk, or any other official required by law to ascertain the amount of the equalized assessed value of all taxable property within such district for the purpose of computing any debt service levies to be extended upon taxable property within such district, shall in every year that tax increment allocation financing is in effect ascertain the amount of value of taxable property in a redevelopment project area by including in such amount the certified total initial equalized assessed value of all taxable real property in such area in lieu of the equalized assessed value of all taxable real property in such area. . . .
Section 99.845, RSMo Supp. 1990, provides in pertinent part:
 99.845. Tax increment financing adoption — division of ad valorem taxes — payments in lieu of tax, deposit evaluation not to be used in calculating state school aid formula, when — other taxes included, amount. — . . .
 (1) That portion of taxes levied upon each taxable lot, block, tract, or parcel of real property which is attributable to the initial equalized assessed value of each such taxable lot, block, tract, or parcel of real property in the redevelopment project area shall be allocated to and, when collected, shall be paid by the county collector to the respective affected taxing districts in the manner required by law in the absence of the adoption of tax increment allocation financing;
 (2) Payments in lieu of taxes attributable to the increase in the current equalized assessed valuation of each taxable lot, block, tract, or parcel of real property in the redevelopment project area over and above the initial equalized assessed value of each such unit of property in the redevelopment project area shall be allocated to and, when collected, shall be paid to the municipal treasurer who shall deposit such payment in lieu of taxes into a special fund called the "Special Allocation Fund" of the municipality for the purpose of paying redevelopment project costs and obligations incurred in the payment thereof. . . .
Payment in lieu of taxes is defined in Section 99.805(7), RSMo 1986, as follows:
 99.805. Definitions. — As used in sections 99.800 to 99.865, unless the context clearly requires otherwise, the following terms shall mean:
* * *
 (7) "Payment in lieu of taxes", those estimated revenues from real property in a redevelopment project area acquired by a municipality, which according to the redevelopment project or plan are to be used for a private use, which taxing districts would have received had a municipality not adopted tax increment allocation financing, and which would result from levies made after the time of the adoption of tax increment allocation financing during the time the current equalized value of real property in the project area exceeds the total initial equalized value of real property in such area until the designation is terminated pursuant to subsection 2 of section 99.850;
* * *
These statutes provide that a taxing district's property tax rate will be applied to the initial equalized assessed valuation of all real property in the redevelopment project area every year until the redevelopment project designation is terminated. The difference between the initial equalized assessed valuation and the current equalized assessed valuation in any given year will be the basis for calculating payments in lieu of taxes for that year which will be used to pay for the redevelopment project itself. Increases in the assessed valuation will be the basis for calculating payments in lieu of taxes which will go not to the taxing districts but to the redevelopment project.
Your question arises because of constitutional and statutory provisions which may provide for a rollback in a taxing district's property tax rate when there is an increase in the assessed valuation. See Article X, Section 22 of the Missouri Constitution (which was enacted as part of what is commonly referred to as the Hancock Amendment); Section 137.073, RSMo Supp. 1990; and Section 137.115, RSMo Supp. 1990. ArticleX, Section 22 of the Missouri Constitution provides in part:
 Section 22. Political subdivisions to receive voter approval for increases in taxes and fees — rollbacks may be required — limitation not applicable to taxes for bonds. (a) . . . If the assessed valuation of property as finally equalized, excluding the value of new construction and improvements, increases by a larger percentage than the increase in the general price level from the previous year, the maximum authorized current levy applied thereto in each county or other political subdivision shall be reduced to yield the same gross revenue from existing property, adjusted for changes in the general price level, as could have been collected at the existing authorized levy on the prior assessed value.
* * *
Section 137.073 provides in part:
 137.073. Definitions — revision of prior levy, when, procedure. —
* * *
 2. Whenever changes in assessed valuation that result from a general reassessment of real property within the county are entered in the assessor's books, the county clerk in all counties and the assessor of St. Louis city shall notify each political subdivision wholly or partially within the county of the change in valuation, and each political subdivision wholly or partially within the county, including municipalities maintaining their own tax books, shall immediately revise the rates of levy for each purpose for which taxes are levied to the extent necessary to produce from all taxable property, including state assessed property, substantially the same amount of tax revenue as was produced in the previous year and, in addition thereto, a percentage of the previous year's revenues equal to the preceding valuation factor of the political subdivision.
 3. Whenever the assessed valuation of real or real and personal property combined within a political subdivision or taxing authority has increased by ten percent or more over the prior year's valuation by action other than a general reassessment, the political subdivision or taxing authority shall immediately revise and lower the rates of levy for each purpose for which taxes are levied to the extent necessary to produce from all taxable property, including state assessed property, substantially the same amount of tax revenue as set forth in estimates filed by school districts for the current year as required by section 164.011, RSMo, or as estimated in the annual budget for the fiscal year adopted in accordance with chapters 50 and 67, RSMo, by political subdivisions other than school districts. The lower rate of levy as determined by the taxing authority, or when a court has determined the tax rate reduction, shall then be recertified to the county clerk.
* * *
Section 137.115 provides in part:
 137.115. Real and tangible personal property, assessment — equalization maintenance plan — assessor may mail forms — classes of property assessment percentage — St. Louis city and County valuation of subclass one real property by computer, burden of proof on assessor, evidence. —
* * *
 (2) Whenever changes in assessed valuation resulting from implementation of an assessment and equalization maintenance plan within the county are entered in the assessor's books, the county clerk in all counties and the assessor of St. Louis city shall notify each political subdivision wholly or partially within the county or St. Louis city of the change in valuation, exclusive of new construction and improvements. Each political subdivision wholly or partially within the county or St. Louis city, including municipalities maintaining their own tax books, shall immediately revise the rates of levy for each purpose for which taxes are levied to the extent necessary to produce from all taxable property, exclusive of new construction and improvement, substantially the same amount of tax revenue as was produced in the previous year, except that the rate may not exceed the greater of the rate in effect in the 1984 tax year; provided . . . . The provisions for setting and revising rates of levy under this section shall prevail in event of conflict with provisions of section 137.073
resulting from implementing an assessment and equalization maintenance plan in each odd-numbered year, and the revised rate determined under this section shall become the tax rate ceiling as defined under section 137.073 and such rate may be increased only in the manner provided by law and the constitution. The value of "new construction and improvements" shall include the additional assessed value of all improvements or additions to real property which were begun after and were not part of the prior year's assessment, except that the additional assessed value of all improvements or additions to real property which had been totally or partially exempt from ad valorem taxes pursuant to sections 99.800 to 99.865, RSMo, sections 135.200 to 135.255, RSMo, and section 353.110, RSMo, shall be included in the value of "new construction and improvements" when they become totally or partially subject to assessment and payment of all ad valorem taxes. . . . [Emphasis added.]
* * *
Section 137.115.1(2) quoted above specifically provides that the additional assessed value of all improvements or additions to real property which had been totally or partially exempt from ad valorem taxes pursuant to Sections 99.800 to99.865, RSMo (the tax increment financing statutes), are included in the value of "new construction and improvements" when they become totally or partially subject to assessment and payment of all ad valorem taxes. Such provision indicates that the additional assessed valuation is not included as "new construction and improvements" previously. Therefore, in computing the maximum permissible property tax rate for a fire protection district, we conclude the increases in assessed value in a tax increment financing district, which are subject to payments in lieu of taxes and do not provide the basis for additional revenues to the fire protection district, would not be considered in such calculation. Section 137.115 expressly states that in the event of a conflict between Section 137.073
and Section 137.115, the provisions of Section 137.115 prevail.
This conclusion is consistent with the purposes of the tax rollback provisions. In discussing Article X, Section 22(a) of the Missouri Constitution, the Missouri Supreme Court inScholle v. Carrollton R-VII School District, 771 S.W.2d 336
(Mo. banc 1989) stated: "The purpose of the levy reduction is to eliminate a revenue windfall to government resulting from reassessment and to assure that the property tax levy will `yield the same gross revenue [after reassessment] from existing property . . . as could have been collected at the existing authorized levy on the prior assessed value.'" Id., at 338. In Asarco, Incorporated v. McHenry, 679 S.W.2d 863 (Mo. banc 1984), the Missouri Supreme Court, when discussing a prior version of Section 137.073, stated: "Section 137.073, RSMo 1978, was adopted to prevent windfalls to taxing authorities simply because of increases in assessed valuations of locally assessed property." Id., at 864. When the fire protection district does not receive any additional revenue as a result of increases in the assessed valuation of real property in a tax increment financing district, not including such increases when calculating the maximum permissible property tax rate is consistent with the purposes of the tax rollback provisions.
Based on the provision in Section 137.115 discussed above and the purposes of the tax rollback provisions, it is the opinion of this office that increases in assessed valuation in a tax increment financing district, which are subject to payments in lieu of taxes and do not provide the basis for additional revenues to the fire protection district, would not be considered in the calculation of the maximum permissible property tax rate under the property tax rollback provisions.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General