The Honorable Claire C. McCaskill Missouri State Auditor 224 State Capitol Building Jefferson City, MO 65101
Dear Auditor McCaskill:
You have asked our office for an opinion concerning the determination of the largest property tax rate that may be charged by the Special School District of St. Louis County. Your opinion request states that in the November 2000 election, the voters of the Special School District voted to add 24 cents to the District's operating levy, but the ballot measure approved by the voters did not specify what the resulting tax rate would be. You state that your office and the District disagree over the baseline to which the 24-cent increase should be added.
The disagreement focuses on the interpretation of Section 137.073.5(2), RSMo 2000,[1] which states:
 When voters approve an increase in the tax rate, the amount of the increase shall be added to the tax rate ceiling as calculated pursuant to this section to the extent the total rate does not exceed any maximum rate prescribed by law. If a ballot question presents a stated tax rate for approval rather than describing the amount of increase in the question, the stated tax rate approved shall be the current tax rate ceiling. The increased tax rate ceiling as approved may be applied to the total assessed valuation of the political subdivision at the setting of the next tax rate.
(Emphasis added.)
A political subdivision's "tax rate ceiling" is subject to revision in the summer of each year based on changes in property assessments, which are reported to political subdivisions by May 31 of each year. Thus, the issue presented by your opinion request can be stated as follows: Should the Special School District add 24 cents to the tax rate ceiling that was applicable at the time of the November 2000 election? Or should the District wait until the summer of 2001, calculate a new tax rate ceiling based on changes in assessments that have been reported to it, and then add 24 cents to that newly calculated tax rate ceiling?
Although your request focuses on the disagreement concerning interpretation of Section 137.073.5(2) and its effect on the Special School District's "tax rate ceiling," the maximum levy that a political subdivision may charge is also limited by Article X, Section 22(a) of the Missouri Constitution, which is part of the so-called Hancock Amendment. Accordingly, your request also requires interpretation of Article X, Section 22(a).[2]
 Background
Section 137.073 establishes the process and calculations for determining each political subdivision's "tax rate ceiling." Section137.073 is designed to prevent windfalls to taxing authorities that would otherwise occur simply because of increases in assessed valuations. SeeAsarco, Inc. v. McHenry, 679 S.W.2d 863, 864 (Mo.banc 1984). The calculations established by Section 137.073 are detailed, but generally they require a political subdivision to reduce a tax rate in a year where assessed valuation of existing property increases at a pace greater than the general rate of inflation. See Section 137.073.2. The statute thereby protects taxpayers from increases in the amount of taxes they otherwise would pay if they were charged the same, preexisting tax rate on property that is now assessed at a greater value. See Asarco, Inc.,679 S.W.2d at 864.
The process for revising a political subdivision's tax rate ceiling falls into the annual sequence of events involved in assessment and levy of property taxes. Of interest here, the county assessor presents the assessment books to the county's governing body by May 31 of each year. Section 137.245. The county clerk then notifies each political subdivision in the county of changes in valuation of various categories of property and political subdivisions revise their tax rates according to the calculations of Section 137.073. Political subdivisions then fix their tax rates and those rates are entered in the tax books — for counties by September 20 (Section 137.055.1) and for other political subdivisions by September 1 (Section 67.110.1). Tax bills for the year are sent thereafter.
A political subdivision's tax rate ceiling may be increased by voters.See Section 137.073.1(3) (tax rate ceiling "is the maximum tax rate that may be levied, unless a higher tax rate ceiling is approved by voters . . . as provided in this section"). Section 137.073.5(2), addresses how a voter-approved tax increase affects the tax rate ceiling.
 Analysis of Section 137.073.5(2)
The goal of statutory interpretation is to ascertain the intent of the legislature from the language used and to give effect to that intent, if possible, and to consider the words used in their plain and ordinary meaning. Butler v. Mitchell-Hugeback, Inc., 895 S.W.2d 15, 19 (Mo.banc 1995). The meaning of a word depends to some extent on its context.Id. Thus, where terms may have several shades of meaning in their ordinary usage, it is appropriate to examine the context of a statute to identify the particular meaning intended by the legislature. See J.B.Vending Co., Inc. v. Dir. of Revenue, 54 S.W.3d 183, 187 (Mo.banc 2001). Applying these and other principles of statutory interpretation, it is apparent that the voter-approved tax increase should be added to the tax rate ceiling that was applicable for the date of the election.
First, the introductory clause of Section 137.073.5(2) states that the voter-approved increase shall be added to the tax rate ceiling as calculated pursuant to that section "[w]hen voters approve an increase in the tax rate." Section 137.073.5(2) (emphasis added). The term "when" means "at or during the time that." Webster's Third New International Dictionary 2602 (1993). This indicates that, in determining the new tax rate ceiling resulting from a voter-approved tax increase, the increased amount is added to the tax rate that applied "at . . . the time" of voter approval, not at some later time when new assessments make it possible to revise the rate that applied on election day.[3]
Second, the final sentence of Section 137.073.5(2) provides: "The increased tax rate ceiling as approved may be applied to the total assessed valuation of the political subdivision at the setting of the next tax rate." Again, this language provides context showing that the voter-approved increase should be added to the tax rate ceiling applicable on election day. The sentence indicates that the new tax rate ceiling is an amount "approved" by the voters and "applied . . . at the setting of the next tax rate," rather than an indefinite amount that must await new assessments and the setting of the next tax rate for determination.
Third, the language in question arises in the context of a statute focused on voter control of tax rates. It would be inconsistent with that context for Section 137.073.5(2) to be interpreted so that voters going to the polls in November 2000 would not know the baseline to which a 24-cent increase would be added, but instead would have to wait until new assessments arrived in the summer of 2001 and further calculations were performed to know what new tax rate ceiling they had approved.
Finally, the provision of Section 137.073.5(2) requiring a voter-approved tax increase to be added "to the tax rate ceiling as calculated pursuant to this section" is consistent with this interpretation. Assuming that the provisions of Section 137.073 had been followed in 2000, the tax rate ceiling applicable for the date of the November 2000 election was in fact "the tax rate ceiling as calculated pursuant to" Section 137.073. Instead of indicating a need to wait for the next year's assessments and calculations, that language simply indicates that the voter-approved increase is to be added to the tax rate ceiling as previously revised pursuant to Section 137.073, instead of being added to an unrevised rate adopted at some point in the past. In that regard, your opinion request indicates that the ballot language put to the Special School District's voters in November 2000 asked whether 24 cents should be added to "the operating levy established in 1986." Thus, in this case, the language of Section 137.073.5(2) makes clear that the ballot must not be understood to refer to the amount of the levy rate as it was established in 1986, but instead to the amount of that rate as it stood in 2000, after it had been revised through the years pursuant to Section 137.073.
Accordingly, the 24-cent increase approved by the voters of the Special School District in November 2000 should be added to the tax rate ceiling that was applicable for the date of that election. That new tax rate ceiling would be applied to the assessed valuation of the Special School District at the setting of the next tax rate in 2001. The new tax rate ceiling would then be subject to revision in future years pursuant to Section 137.073.
 Interpretation of Article X, Section 22(a)
Article X, Section 22(a) of the Missouri Constitution provides:
 Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution when this section is adopted or from increasing the current levy of an existing tax, license or fees, above that current levy authorized by law or charter when this section is adopted without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon. If the definition of the base of an existing tax, license or fees, is broadened, the maximum authorized current levy of taxation on the new base in each county or other political subdivision shall be reduced to yield the same estimated gross revenue as on the prior base. If the assessed valuation of property as finally equalized, excluding the value of new construction and improvements, increases by a larger percentage than the increase in the general price level from the previous year, the maximum authorized current levy applied thereto in each county or other political subdivision shall be reduced to yield the same gross revenue from existing property, adjusted for changes in the general price level, as could have been collected at the existing authorized levy on the prior assessed value.
Article X, Section 22(a) limits the amount of levy that a political subdivision may charge, but it plainly permits a levy to be increased by "the approval of the required majority of the qualified voters of that . . . political subdivision voting thereon." Accordingly, the new maximum levy rate permitted under the provisions of Article X, Section 22(a) should be the amount of the levy rate approved by voters.
The question is how to determine what levy rate voters should be considered to have approved for purposes of Article X, Section 22(a) in a circumstance where they have voted on ballot language that proposes an addition to an existing levy but does not specify what the resulting levy would be. Article X, Section 22(a) is silent on that matter, but Section137.073.5(2) establishes by law what rate of levy voters are considered to have approved in such circumstances. Article X, Section 24(b) provides that "the general assembly may enact laws implementing [Article X, Sections 16-23] which are not inconsistent with the purposes of said sections." Accordingly, when voters approve a tax increase without specifying what the resulting rate will be, the new tax rate ceiling determined pursuant to Section 137.073.5(2) — as interpreted above — should also be the new maximum levy rate permitted by Article X, Section 22(a), unless there is something about the determination provided by Section 137.073.5(2) that would allow for a rate higher than what would be permitted by Article X, Section 22(a).
Section 137.037 is structured to avoid such an occurrence. Section137.073 and Article X, Section 22 are worded somewhat differently, so there is potential for the tax rate ceiling established pursuant to Section 137.073 to be subject to different adjustments and thus to differ from the maximum levy permitted by Article X, Section 22 over time.Green v. Lebanon R-III Sch. Dist., 13 S.W.3d 278, 285-86 (Mo.banc 2000). But, as the Missouri Supreme Court has stated, political subdivisions:
 [A]re required to utilize the lowest tax rate ceiling as the highest lawful levy in the district. Under the legislative scheme, computing a separate tax rate ceiling pursuant to section 137.073, RSMo, will not violate the terms of article X, section 22(a) because the section 137.073, RSMo, tax rate ceiling will be used only if it is lower than that required by article X, section 22.
Id. Thus, when properly applied, Section 137.073 cannot produce a tax rate ceiling that exceeds the maximum rate permitted by Article X, Section 22.
As explained above, pursuant to Section 137.073.5(2) voters of the Special School District added 24 cents to a baseline of the tax rate ceiling applicable for the date of the November 2000 election. Assuming that the provisions of Section 137.073 had been properly applied to that point in time, that baseline could not have exceeded the maximum levy rate allowed by Article X, Section 22(a). Accordingly, allowing the rate approved by voters to be determined as provided by law in Section137.073.5(2) would not be contrary to Article X, Section 22(a).
 CONCLUSION
The 24-cent tax rate increase approved by the voters of the Special School District of St. Louis County in November 2000 should be added to the tax rate ceiling that was applicable for the date of that election to determine the District's new tax rate ceiling pursuant to Section137.073.5(2), RSMo. Assuming that Section 137.073 had been properly applied to determine the District's tax rate ceiling to that point in time, the new tax rate ceiling calculated in that fashion would also be the District's new maximum levy permitted by Article X, Section 22(a) of the Missouri Constitution.
Very truly yours,
 JEREMIAH W. (JAY) NIXON Attorney General
[1] Section 137.073 was amended by Senate Substitute for Senate Committee Substitute for House Committee Substitute for House Bills 1150, 1237 and 1327, 91st General Assembly, Second Regular Session (2002), but the events addressed in this opinion occurred before that amendment, so statutory citations are to RSMo 2000 unless otherwise indicated. Nonetheless, that legislation did not change the language of Section 137.073.5(2) and thus would not change this opinion.
[2] Your request specifically asks whether "the maximum authorized tax levy for the Special School District of St. Louis County [should] be set at $.8380 or $.8645." Because we are not in a position to verify the data and calculations yielding specific monetary amounts for the tax rate, we do not address this detail of your request. Instead, we focus our opinion on the questions of law concerning the interpretation of Section 137.073 and Article X, Section 22(a) that are raised by the scenario you have described.
[3] The term "when" does not always indicate a particular time, but instead can be synonymous with the term "if." Id. But that interpretation is not supported by context in Section 137.073.5(2). In the second sentence of that provision, the legislature stated how the new tax rate ceiling should be determined, "[i]f a ballot question presents a stated tax rate for approval." Section 137.073.5(2) (emphasis added). "The legislature is presumed to have intended each word in a statute to have meaning, . . ." State v. Duggar, 806 S.W.2d 407, 409 (Mo.banc 1991). Thus, when it "expressly employ[s]" different words in addressing related subjects, "the legislature is presumed to have intended a distinction." Id. Here, where the legislature used the terms "when" and "if" in back-to-back sentences, it should be understood to have intended the term "when" to indicate a particular time, not to be synonymous with the term "if."