In the Missouri Court of Appeals
 Eastern District
 DIVISION FOUR

 LARRY D. BLANKENSHIP, ) No. ED108824
 )
 Appellant, ) Appeal from the Circuit Court of
 ) Franklin County
 vs. )
 )
 FRANKLIN COUNTY COLLECTOR, ) Honorable Daniel G. Pelikan
 ET AL., )
 )
 Respondent. ) Filed: March 2, 2021

 Introduction

 Larry Blankenship, individually and on behalf of a certified class of owners of real estate

and personal property (collectively, “Taxpayers”) in the Strain-Japan R-XVI (R-16) School

District (“District”), sued to challenge the District’s operating funds tax levies for 2013, 2014,

2015, 2016, 2017, and 2018. Taxpayers alleged the District erroneously determined the highest

rate of tax it could levy without additional voter approval in each of those years. Specifically,

Taxpayers contended the tax levies for those years were improperly adjusted using section

137.073.5(2).1 Taxpayers argued a tax levy calculated under section 137.073.5(2) may be used

only if it is lower than the tax levy authorized by article X, section 22(a) of the Missouri

Constitution (the “Hancock Amendment”).

1
 All statutory references are to RSMo (2017), unless otherwise indicated.
 Taxpayers requested an order declaring the District’s levies for 2013, 2014, 2015, 2016,

2017, and 2018 unlawful; enjoining the District from collecting taxes under the unlawful levies;

refunding to Taxpayers any sums paid over the amount due on each Taxpayer’s respective tax

bills when the lawful levy is used to compute the 2013, 2014, 2015, 2016, 2017, and 2018 tax

bills; and awarding Taxpayers their costs and attorney’s fees. The trial court found the District

did not violate section 22(a) of the Hancock Amendment or section 137.073 and Taxpayers were

entitled to no refunds. The trial court entered judgment for the District.

 Taxpayers appeal. In Point I, Taxpayers argue the trial court erred in determining the

District’s levies did not violate section 22(a) of the Hancock Amendment. In Point II, Taxpayers

argue the trial court erred in determining the District’s levies complied with section 137.073

because, although section 137.073.5(2) provides a method for the District to increase its levies in

accordance with the consumer price index (“CPI”) to allow for inflationary assessment growth,

section 137.073.4(2) requires the District to use the lowest tax levy ceiling calculated by section

137.073.5(2) or section 22(a) of the Hancock Amendment, which the District failed to do. In

Point III, Taxpayers argue the trial court erred in determining they were not entitled to refunds

on their 2013, 2014, 2015, 2016, 2017, and 2018 tax bills under section 137.073.9. In Point IV,

Taxpayers argue the trial court erred in determining they were not entitled to refunds on their

2013, 2014, 2015, 2016, 2017, and 2018 tax bills under article X, section 23 of the Hancock

Amendment. In Point V, Taxpayers argue the trial court erred in determining all class members

had to comply with section 139.031.1-2 to be entitled to refunds under section 137.073.9, section

23 of the Hancock Amendment, or section 139.031.1. In Point VI, Taxpayers argue the trial

court erred in determining they were not entitled to costs and attorney’s fees under section 23 of

 2
the Hancock Amendment. In Point VII, Taxpayers argue the trial court erred in determining they

were not entitled to costs and attorney’s fees under section 137.073.8.

 “We must first address the issue of our jurisdiction because Article V, Section 3 of the

Missouri Constitution grants exclusive appellate jurisdiction to the Missouri Supreme Court of

all cases involving the constructions of revenue laws of the state.” Maryville Props., L.P. v.

Nelson, 83 S.W.3d 608, 610 (Mo. App. W.D. 2002). Where an appeal involves the application

of revenue laws already construed by the Missouri Supreme Court, jurisdiction lies with our

Court and we are bound to apply the Missouri Supreme Court’s precedent. A.P. Green

Refractories Co. v. State Tax Comm’n of Missouri, 621 S.W.2d, 340, 345 (Mo. App. W.D.

1981). The questions in this appeal have been resolved by prior decisions of the Missouri

Supreme Court. See Franklin Cty. ex rel. Parks v. Franklin Cty. Comm’n, 269 S.W.3d 26 (Mo.

banc 2008); State ex rel. Indus. Servs. Contractors, Inc. v. Cty. Comm’n of Johnson Cty., 918

S.W.2d 256 (Mo. banc 1996); Green v. Lebanon R-III Sch. Dist., 13 S.W.3d 278 (Mo. banc

2000); Zweig v. Metro. St. Louis Sewer Dist., 412 S.W.3d 223 (Mo. banc 2013); Fort Zumwalt

Sch. Dist. v. State, 896 S.W.2d 918 (Mo. banc 1995). Because this case involves the application

of revenue laws already authoritatively construed, we determine jurisdiction is properly vested in

this Court. Stout Indus., Inc. v. Leachman, 699 S.W.2d 129, 130 (Mo. App. E.D. 1985).

 The trial court’s judgment is reversed and remanded for further proceedings consistent

with this opinion.

 Factual and Procedural Background

 The facts are undisputed. The District is a political subdivision of the State of Missouri

with authority to set an operating funds tax levy and assess taxes against real and personal

property within its boundaries. As of November 4, 1980, the District calculated its tax levy

 3
ceiling at $3.50 per $100 of assessed valuation. On November 6, 2012, the voters approved an

increase of the District’s tax levy ceiling to $3.5342 per $100 of assessed valuation.2 The voters

have not approved an increase to the District’s tax levy ceiling since November 6, 2012.

 The District used the Missouri Auditor’s office online tax form and tax rate calculators to

determine its tax levies for 2012, 2013, 2014, 2015, 2016, 2017, and 2018. The District’s tax

levies per $100 of assessed valuation for those years were:

 2012 $3.1842
 2013 $3.8393
 2014 $3.8393
 2015 $3.8393
 2016 $3.7770
 2017 $3.7540
 2018 $3.7798

 The District’s tax levies for 2013, 2014, 2015, 2016, 2017, and 2018 exceeded the

District’s November 4, 1980 tax levy of $3.50 and the District’s November 6, 2012 voter-

approved tax levy of $3.5342. The District increased its tax levies in 2013, 2014, 2015, 2016,

2017, and 2018 using the method of adjustment provided in section 137.073.5(2). Section

137.073.5(2) provides the tax levy ceiling:

 shall be adjusted such that when applied to the current total assessed valuation of
 the political subdivision, excluding new construction and improvements since the
 date of the election approving such increase, the revenue derived from the
 adjusted tax rate ceiling is equal to the sum of: the amount of revenue which

2
 The District’s ballot initiative presented to and passed by the voters on November 6, 2012, read:

 Shall Strain-Japan R-XVI of Franklin County, Missouri, be authorized to increase the operating
 tax levy ceiling of the District to $3.5342 per one hundred dollars of assessed valuation for general
 operating purposes? If this proposition is approved, the adjusted operating levy of the District will
 increase by $0.3500 from $3.1842 currently to $3.5342 per one hundred dollars of assessed
 valuation.

 4
 would have been derived by applying the voter-approved increased tax rate
 ceiling to total assessed valuation of the political subdivision, as most recently
 certified by the city or county clerk on or before the date of the election in which
 such increase is approved, increased by the percentage increase in the [CPI], as
 provided by law.

 The District’s assessed valuations, including real and personal property, for 2012,

2013, 2014, 2015, 2016, 2017, and 2018 were:

 2012 $11,206,793
 2013 $10,818,937
 2014 $10,865,691
 2015 $11,101,202
 2016 $11,339,918
 2017 $11,947,844
 2018 $12,266,283

 The District’s adjusted valuations, i.e., the total assessed valuation excluding new

construction and improvements, for 2012, 2013, 2014, 2015, 2016, 2017, and 2018 were:

 2012 $10,970,495
 2013 $10,491,537
 2014 $10,747,326
 2015 $10,852,436
 2016 $11,122,098
 2017 $11,780,331
 2018 $12,862,824

 The increases in the general price level as measured by the CPI in 2012, 2013, 2014,

2015, 2016, 2017, and 2018 for each of the preceding twelve-month periods were:

 5
 2012 3.0%
 2013 1.7%
 2014 1.5%
 2015 0.8%
 2016 0.7%
 2017 2.1%
 2018 2.1%

 The percentage changes in the District’s assessed valuation of property as finally

equalized, excluding the value of new construction and improvements, for 2013, 2014, 2015,

2016, 2017, and 2018 were:

 2013 -6.3823% from 2012
 2014 -0.6619% from 2013
 2015 -0.1220% from 2014
 2016 +0.1882% from 2015
 2017 +3.8837% from 2016
 2018 -0.7116% from 2017

 The District’s tax levies for 2013, 2014, 2015, 2016, 2017, and 2018 yielded additional

revenue to the District exceeding the revenue the District would have realized had the November

6, 2012 voter-approved rate of $3.5342 per $100 of assessed valuation been levied in 2012.

Specifically, the District’s levies resulted in $33,008 of additional revenue in 2013; $33,150 of

additional revenue in 2014; $33,869 of additional revenue in 2015; $27,533 of additional

revenue in 2016; $26,261 of additional revenue in 2017; and $30,126 of additional revenue in

2018.

 6
 Blankenship paid his 2013, 2014, 2015, and 2016 taxes but did not do so under protest.

He paid his 2017 and 2018 taxes under protest and submitted a written statement explaining the

grounds on which his protests were based. Blankenship made a formal complaint with the

prosecuting attorney of Franklin County on November 30, 2017, challenging the District’s 2013,

2014, 2015, 2016, and 2017 tax levies. The prosecutor failed to bring an action within ten days

of November 30, 2017.

 On December 22, 2017, Taxpayers filed their Petition against the District and Linda

Emmons, the Collector of Franklin County. Their Petition alleged the District “improperly

calculated its tax rate for the year 2013, which resulted in its collection of excess tax revenue in

2013, 2014, 2015, 2016 and 2017.” On October 8, 2018, Blankenship made another formal

complaint with the prosecuting attorney of Franklin County, challenging the District’s 2018 tax

levy. The prosecutor failed to bring an action within ten days of October 8, 2018. On October

31, 2018, Taxpayers filed their Second Amended Petition, alleging the District “improperly

calculated its tax rate for the years 2013 through 2018, which resulted in its collection of excess

tax revenue in each year 2013 through 2017 and anticipated collection of excess tax revenue in

2018.” Taxpayers alleged the highest lawful levy for the District should have been $3.5342 per

$100 of assessed valuation—the highest voter-approved tax levy rate ceiling passed on

November 6, 2012—in 2013, 2014, 2015, 2016, 2017, and 2018. Taxpayers alleged the method

of adjustment provided by section 137.073.5(2) and engaged in by the District in 2013, 2014,

2015, 2016, 2017, and 2018 was unconstitutional under section 22(a) of the Hancock

Amendment because it resulted in a higher tax levy than the maximum tax levy authorized by

section 22(a) of the Hancock Amendment.

 7
 Taxpayers requested the trial court declare the District’s tax levies in 2013, 2014, 2015,

2016, 2017, and 2018 violated section 22(a) of the Hancock Amendment. Taxpayers also

requested the trial court declare section 137.073.5(2) is unconstitutional because it violates

section 22(a) of the Hancock Amendment to the extent it would permit a higher tax levy than

permitted by section 22(a) of the Hancock Amendment. Taxpayers requested the trial court

order the District to refund the excessive funds collected in 2013, 2014, 2015, 2016, 2017, and

2018 under section 139.031.5 and section 137.073.9 and enjoin the same. Taxpayers further

requested they be awarded costs and attorney’s fees under section 23 of the Hancock

Amendment and section 137.073.8.

 The District asserted its levies imposed in 2013, 2014, 2015, 2016, 2017, and 2018

represented the highest lawful levy in each year. The District argued section 137.073.5(2) is

constitutional and permits it to increase the tax levy above the highest voter-approved tax levy

ceiling when the assessed valuation of property decreases to ensure the District realizes the same

tax revenue approved by the voters on November 6, 2012, as increased by the percentage

increase in the CPI. The District argued this method of adjustment violates neither section 22(a)

of Hancock Amendment nor section 137.073 and Taxpayers were entitled to no refunds, costs, or

attorney’s fees.

 The trial court found no violation of section 22(a) of the Hancock Amendment and

entered judgment for the District. The trial court found the term “levy” as used in section 22(a)

means an amount of tax revenue and not a rate of taxation. The trial court held:

 Section 22 of the Hancock Amendment is not invoked unless there is first an
 increase in the amount of tax revenue which a political subdivision assesses.
 Because of this limitation, adjustments to tax rates in the name of maintaining
 revenue neutrality do not trigger the Hancock Amendment unless those
 adjustments result in an increase in taxes. Because the District’s increased tax
 rates did not generate additional tax revenue above the amount approved by voters

 8
 in 2012, it is clear the District’s rates complied with the Hancock Amendment,
 and Section 137.073 RSMo. is constitutional.

The trial court also found “the District at all times complied with the terms of section 137.073 in

setting its tax rates” for 2013, 2014, 2015, 2016, 2017, and 2018. The trial court found

Taxpayers were entitled to no refunds under either section 23 of the Hancock Amendment or

sections 139.031.1, 139.031.5, and 137.073.9. The trial court did not award Taxpayers any costs

or attorney’s fees.

 This appeal follows.

 Standard of Review

 “Questions of law, including those of statutory and constitutional interpretation, are

reviewed de novo.” St. Louis Police Leadership Org. v. City of St. Louis, 484 S.W.3d 882, 888

(Mo. App. E.D. 2016). Where, as here, the parties submitted a joint stipulation of material facts,

“the only question before [us] is whether the trial court drew the proper legal conclusions from

the facts stipulated.” Schroeder v. Horack, 592 S.W.2d 742, 744 (Mo. banc 1979).

 Discussion

 Point I:
 The District’s 2013 through 2018 Tax Levies Were Improperly Increased

 In Point I, Taxpayers argue the trial court erred in determining the District’s tax levies for

2013, 2014, 2015, 2016, 2017, and 2018 did not violate section 22(a) of the Hancock

Amendment. Taxpayers argue the trial court’s finding that the term “levy” as used in section

22(a) means the amount of tax revenue and not the rate of taxation is erroneous. Taxpayers also

argue the trial court’s conclusion that “Section 22 of the Hancock Amendment is not invoked

unless there is first an increase in the amount of tax revenue which a political subdivision

assesses” is erroneous. Taxpayers argue section 22(a) prohibits the District from increasing its

 9
tax levy above $3.5342, which is the highest tax levy approved by the voters. Because each of

the District’s tax levies for 2013, 2014, 2015, 2016, 2017, and 2018 exceeded $3.5342 Taxpayers

contend the trial court erred in determining the District did not violate the Hancock Amendment

in setting its tax levies for those years.

 The Hancock Amendment was approved by Missouri voters in 1980 and “is aimed at

erecting a comprehensive, constitutionally-rooted shield to protect taxpayers from government’s

ability to increase the tax burden above that borne by the taxpayers on November 4, 1980.”

Breitenfeld v. Sch. Dist. of Clayton, 399 S.W.3d 816, 826 (Mo. banc 2013) (internal quotations

and alterations omitted); MO. CONST. art. x, §§ 16-24. “The Hancock Amendment is intended as

a tax and spending lid for state government, as its purpose is to limit taxes by establishing tax

and revenue limits and expenditure limits for the state and other political subdivisions which may

not be exceeded without voter approval.” Breitenfeld, 399 S.W.3d at 826 (internal quotations

omitted).

 “To help achieve the amendment’s purpose of reining in governmental taxation and

spending, section 22(a) of the Hancock Amendment imposes limitations on a political

subdivision’s ability to increase a tax.” Rohrer v. Emmons, 289 S.W.3d 600, 604 (Mo. App.

E.D. 2009). Section 22(a) of the Hancock Amendment provides:

 (a) Counties and other political subdivisions are hereby prohibited from levying
 any tax, license or fees, not authorized by law, charter or self-enforcing provisions
 of the constitution when this section is adopted or from increasing the current levy
 of an existing tax, license or fees, above that current levy authorized by law or
 charter when this section is adopted without the approval of the required majority
 of the qualified voters of that county or other political subdivision voting thereon.
 If the definition of the base of an existing tax, license or fees, is broadened, the
 maximum authorized current levy of taxation on the new base in each county or
 other political subdivision shall be reduced to yield the same estimated gross
 revenue as on the prior base. If the assessed valuation of property as finally
 equalized, excluding the value of new construction and improvements, increases
 by a larger percentage than the increase in the general price level from the

 10
 previous year, the maximum authorized current levy applied thereto in each
 county or other political subdivision shall be reduced to yield the same gross
 revenue from existing property, adjusted for changes in the general price level, as
 could have been collected at the existing authorized levy on the prior assessed
 value.

In determining whether a political subdivision has violated section 22(a) of the Hancock

Amendment, the “constitution’s prohibition is measured against the tax levy.” Franklin Cty. ex

rel. Parks, 269 S.W.3d at 30.

 We first address Taxpayers’ challenge to the trial court’s finding that the term “levy” as

used in section 22(a) means the amount of tax revenue and not the rate of taxation. The term

“levy” is not defined by section 22(a). However, the Missouri Supreme Court has defined a tax

“levy” as a legislative declaration “that a tax of a certain amount, or a certain percentage on

value, shall be imposed on persons and property subject thereto.” State ex rel. Indus. Servs.

Contractors, Inc., 918 S.W.2d at 256 (emphasis added) (quoting 84 C.J.S. Taxation § 349

(1954)). The Missouri Supreme Court has explained “the term ‘highest lawful levy’ . . .

describe[s] that rate above which a school district may not levy, taking into account all relevant

ceilings or lids under Missouri law. A tax levy is an amount owed for each $100.00 of assessed

property valuation.” Green, 13 S.W.3d at 280 (emphasis added).

 “‘Revenue,’ as that term is used in the Hancock Amendment, by contrast, is ‘the annual

or periodical yield of taxes, excises, customs, duties, and other sources of income that a nation,

state or municipality collects and receives into the treasury for public use. . . .’” Franklin Cty. ex

rel. Parks, 269 S.W.3d at 30. “One determines revenue by multiplying the levy by the assessed

value of property; the words ‘levy’ and ‘revenue’ are not synonyms.” Id. Thus, the term “levy”

as used in section 22(a) refers to a tax rate of a certain percentage on assessed valuation of

property. See State ex rel. Indus. Servs. Contractors, 918 S.W.2d at 256; Green, 13 S.W.3d at

 11
280. The trial court’s finding that the term “levy” as used in section 22(a) means the amount of

tax revenue and not the rate of taxation is erroneous and contrary to Missouri law.

 Given the trial court’s erroneous definition of the term “levy” as used in section 22(a), the

trial court’s conclusion that “Section 22 of the Hancock Amendment is not invoked unless there

is first an increase in the amount of tax revenue which a political subdivision assesses” is also

erroneous. The plain language of section 22(a) shows the Hancock Amendment is violated when

the current levy, or rate, of a tax exceeds the actual levy in effect when the Hancock Amendment

was adopted or last approved by the voters. MO. CONST. art. X, sec. 22(a) (“Counties and other

political subdivisions are hereby prohibited . . . from increasing the current levy of an existing

tax, license or fees, above that current levy authorized by law or charter when this section is

adopted without the approval of the required majority of the qualified voters of that county or

other political subdivision voting thereon”); Franklin Cty. ex rel. Parks, 269 S.W.3d at 30;

Wenzlaff v. Lawton, 653 S.W.2d 215, 216 (Mo. banc 1983); Arbor Inv. Co., LLC v. City of

Hermann, 341 S.W.3d 673, 677 n.3 (Mo. banc 2011).

 Here, the voters approved no increase to the District’s tax levy ceiling since November 6,

2012. It is undisputed the District’s tax levies for 2013, 2014, 2015, 2016, 2017, and 2018

exceeded the District’s November 4, 1980 tax levy of $3.50 and the District’s November 6, 2012

voter-approved tax levy of $3.5342. The Hancock Amendment forbids such increases without

voter approval.

 The third sentence of section 22(a) “requires annual adjustments to the ‘maximum

authorized current levy’ under certain circumstances, taking into account the finally equalized

assessed valuation of property, the value of new construction and improvements, and the

increase in the general price level.” However, this sentence in section 22(a) does not authorize

 12
upward adjustments to the tax levy. To the contrary, it provides where the finally equalized

assessed valuation of property in the political subdivision “increases by a larger percentage than

the increase in the general price level from the previous year,” the tax levy rate should be

“reduced to yield the same gross revenue from existing property, adjusted for changes in the

general price level, as could have been collected at the existing authorized levy on the prior

assessed value.” This provision commands a rollback of the tax levy to stop political

subdivisions from gaining a windfall because of higher assessed valuations. Scholle v.

Carrollton R-VII Sch. Dist., 771 S.W.2d 336, 336 (Mo. banc 1989).

 Here, the finally equalized assessed valuation of property in the District decreased from

the previous year in 2013, 2014, and 2015. Such decreases in the finally equalized assessed

valuation of property require no decrease of the tax levy under section 22(a). Thus, in 2013,

2014, and 2015, the District’s tax levy ceiling should have remained at $3.5342. In 2016, the

finally equalized valuation of property in the District increased by 0.1882% from 2015.

However, this percentage increase was not larger than the increase in the general price level as

measured by the CPI that year, which was 2.1%. Increases in finally equalized assessed

valuation of property require no decrease of the tax levy under section 22(a) so long as the

increase is not by a percentage larger than the increase in the general price level as measured by

the CPI. Thus, in 2016, the District’s tax levy rate ceiling should have remained at $3.5342. In

2017, the finally equalized valuation of property in the District increased by 3.8837% from 2016.

This percentage increase was larger than the increase in the general price level as measured by

the CPI that year, which was 2.1%. Thus, in 2017, the District’s tax levy ceiling should have

been reduced to $3.4810. In 2018, the finally equalized assessed valuation of property in the

District decreased from 2017. Because a decrease in the finally equalized assessed valuation of

 13
property requires no decrease of the tax levy under section 22(a), the District’s tax levy ceiling

should have remained at $3.5342 in 2018.3

 The District’s tax levies for 2013, 2014, 2015, 2016, 2017, and 2018 violated section

22(a) of the Hancock Amendment.

 Point I is granted.

 Point II:
 The District’s 2013 through 2018 Tax Levies Violated Section 137.0734

 In Point II, Taxpayers argue the trial court erred in determining the District’s tax levies

for 2013, 2014, 2015, 2016, 2017, and 2018 complied with section 137.073 because, although

section 137.073.5(2) provides a method for the District to increase its tax levy in accordance

with the CPI to allow for inflationary assessment growth, section 137.073.4(2) required the

District to use the lowest tax levy ceiling calculated by section 137.073.5(2) or section 22(a) of

the Hancock Amendment, which the District failed to do. Taxpayers argue section 137.073

3
 We appreciate the hardship this ruling imposes on the District in the unique situation presented by declining
assessed valuation of taxable property. While reasonable minds can disagree on policy arguments presented by the
implementation of the Hancock Amendment here, we cannot ignore the will of the people as expressed by the plain
language of article X, section 22(a) of the Missouri Constitution. See Cruzan by Cruzan v. Harmon, 760 S.W.2d
408, 417 (Mo. banc 1988) (“Missouri’s constitution must be interpreted according to its plain language and in a
manner consistent with the understanding of the people who adopted it”); see also Missourians to Protect the
Initiative Process v. Blunt, 799 S.W.2d 824, 828 (Mo. banc 1990) (holding the rationales for or against a particular
result “must give way to the plain language and reasonable construction of the constitution [and other related]
statutory provisions”).
4
 The District argues Taxpayers’ second point relied on is not properly preserved for appeal. The District argues
Taxpayers’ “Second Amended Petition and trial briefing are both devoid of any claim that the District violated
§137.073.4(2)” and Taxpayers’ “only argument before the trial court regarding §137.073 was whether §137.073.5(2)
was constitutional.” Our review of the record reveals Taxpayers’ second point relied on is properly preserved for
appeal. Where the issue included in a point relied on has been “presented to or expressly decided by the trial court,”
it is properly preserved for appellate review. In re Marriage of Harris, 446 S.W.3d 320, 324 (Mo. App. S.D. 2014).
Although Taxpayers’ Second Amended Petition fails to explicitly reference section 137.073.4(2), it asks the trial
court to enter an order declaring section 137.073.5(2) unconstitutional to the extent it would allow a higher levy than
that authorized by section 22(a) of the Hancock Amendment. Taxpayers also made the exact argument raised in
their second point relied on in their opposition to the District’s motion for summary judgment, in their reply
suggestions supporting their own motion for summary judgment, and orally during trial. Further, the trial court’s
judgment found “the District at all times complied with the terms of Section 137.073 in setting its tax rates” for
2013, 2014, 2015, 2016, 2017, and 2018. Because the argument Taxpayers raise in their second point relied on was
presented to the trial court in their trial briefings and expressly decided by the trial court, it is preserved for appeal.
See id.

 14
cannot be used to increase the tax levy ceiling beyond that provided by section 22(a) of the

Hancock Amendment.

 Section 137.073.2 provides political subdivisions shall revise their tax levies based on

changes to assessed valuation in order to:

 produce from all taxable property, exclusive of new construction and
 improvements, substantially the same amount of tax revenue as was produced in
 the previous year for each subclass of real property, individually, and personal
 property, in the aggregate, except that the rate shall not exceed the greater of the
 most recent voter-approved rate or the most recent voter-approved rate as
 adjusted under subdivision (2) of subsection 5 of this section.

(emphasis added). Section 137.073.5(2) provides the method of calculating adjustments to the

tax levy:

 When voters approve an increase in the tax rate, the amount of the increase shall
 be added to the tax rate ceiling as calculated pursuant to this section to the extent
 the total rate does not exceed any maximum rate prescribed by law. If a ballot
 question presents a stated tax rate for approval rather than describing the amount
 of increase in the question, the stated tax rate approved shall be adjusted as
 provided in this section and, so adjusted, shall be the current tax rate ceiling. The
 increased tax rate ceiling as approved shall be adjusted such that when applied to
 the current total assessed valuation of the political subdivision, excluding new
 construction and improvements since the date of the election approving such
 increase, the revenue derived from the adjusted tax rate ceiling is equal to the
 sum of: the amount of revenue which would have been derived by applying the
 voter-approved increased tax rate ceiling to total assessed valuation of the
 political subdivision, as most recently certified by the city or county clerk on or
 before the date of the election in which such increase is approved, increased by
 the percentage increase in the [CPI], as provided by law.

(emphasis added). Section 137.073.4(2) provides:

 Each political subdivision required to revise rates of levy pursuant to this section
 or Section 22 of Article X of the Constitution of Missouri shall calculate each tax
 rate it is authorized to levy and, in establishing each tax rate, shall consider each
 provision for tax rate revision provided in this section and Section 22 of Article X
 of the Constitution of Missouri, separately and without regard to annual tax rate
 reductions provided in section 67.505 and section 164.013. Each political
 subdivision shall set each tax rate it is authorized to levy using the calculation
 that produces the lowest tax rate ceiling.

 15
(emphasis added). We must construe section 137.073 “strictly, in favor of the taxpayer and

against the taxing authority.” Asarco, Inc. v. McHenry, 679 S.W.2d 863, 864 (Mo. banc 1984)

(citing Missouri Pac. R.R. Co. v. Campbell, 502 S.W.2d 354, 358 (Mo. 1973)).

 In Green, the Missouri Supreme Court explained section 22(a) and section 137.073

“serve two related but different purposes.” 13 S.W.3d at 285. “Article X, section 22(a) provides

for a maximum authorized levy based on adjustments to the rate levied on November 4, 1980,

unless the voters grant approval otherwise.” Id. at 285-86. “The computation under article X,

section 22(a) establishes the maximum amount that could have been collected at the existing

authorized levy on the prior assessed value.” Id. (alteration in original) (internal quotations

omitted). “The tax rate ceiling under section 137.073, RSMo, meanwhile, is the amount that

would produce from all taxable property . . . substantially the same amount of tax revenue as was

produced in the previous year.” Id. (alteration in original) (internal quotations omitted).

 Thus, “two distinct” tax rate ceilings may be established under section 22(a) and section

137.073. Green, 13 S.W.3d at 286. However, the District may not avail itself of the adjustment

under section 137.073.5(2) without first experiencing an increase in assessed valuation of

property within its boundaries. “Section 137.073 . . . was adopted to prevent windfalls to taxing

authorities simply because of increases in assessed valuations of locally assessed property.”

Asarco, Inc., 679 S.W.2d at 864 (emphasis added); see also Missouri Pac. R.R. Co., 482 S.W.2d

at 509. To hold the purpose of section 137.073 is to ensure a taxing authority receives the same

revenue each year despite experiencing a decrease in assessed valuation of property, as the

District urges, would allow the District to realize higher revenues than the assessed valuation of

property within its boundaries would otherwise produce.

 16
 A careful analysis of section 137.073 reveals the method for adjusting the tax levy ceiling

under section 137.073 is more restrictive than section 22(a) of the Hancock Amendment. See

Opp. Att. Gen. No. 122-85, Proffer, 12-6-82 (emphasis added) (“Section 137.073, RSMo Supp.

1982, does not violate the provisions of Article X, Section 22(a), Missouri Constitution, unless

the operation of such statute is less restrictive than the operation of Article X, Section 22(a)”).

The Missouri Supreme Court confirmed this interpretation of section 137.073 in Green: “Under

the legislative scheme, computing a separate tax rate ceiling pursuant to section 137.073, RSMo,

will not violate the terms of article X, section 22(a) because the section 137.073, RSMo, tax rate

ceiling will be used only if it is lower than that required by article X, section 22.” 13 S.W.3d at

286 (emphasis added).5

 In its judgment, the trial court found section 137.073 permits taxing authorities to revise

tax levy rates to “protect[] . . . against revenue fluctuation.” In so finding, the trial court

primarily relied on Scholle, 771 S.W.2d 336. However, the trial court’s judgment

misunderstands the holding of Scholle. Scholle involved a school district’s use of section

137.073.3,6 which permits recoupment of lost revenue under narrow circumstances not present in

this case. Under Section 137.073.3, a political subdivision may revise its tax rate ceiling to

recoup any revenues it was entitled to receive if it experiences a reduction in the amount of

assessed valuation relating to a prior year “due to decisions of the state tax commission or a court

5
 At trial, Taxpayers argued section 137.073.5(2) was unconstitutional to the extent it would permit a higher tax levy
than authorized by section 22(a) of the Hancock Amendment. Although Taxpayers do not challenge the
constitutionality of section 137.073.5(2) on appeal, we note section 137.073.5(2) is constitutional for the reason
stated by the Missouri Supreme Court in Green v. Lebanon R-III Sch. Dist., 13 S.W.3d 278 (Mo. banc 2000). When
section 137.073.5(2) is correctly interpreted as permitting an adjusted levy ceiling to be used only where the
adjusted ceiling “is lower than that required by article X, section 22,” section 137.073.5(2) harmonizes with section
22(a) of the Hancock Amendment. Id. at 286.
6
 When Scholle was decided, the recoupment provision was located in subsection 4 of section 137.073. In 1992, the
recoupment provision was moved to subsection 3 of section 137.073. The recoupment provision remains in
subsection 3 of section 137.073 as of the date this opinion was authored.

 17
pursuant to section 138.430 to 138.433, or due to clerical errors or corrections in the calculation

or recordation of any assessed valuation.” § 137.073.3.

 In Scholle, the school district used the assessed valuation of property within its

boundaries to set its tax levy rate under section 22(a) and section 137.073 for 1985. Id. at 337.

However, after the 1985 levy was certified and the 1985 tax bills were mailed to the taxpayers,

the Missouri State Tax Commission informed the school district the valuations of certain

properties within the school district had been lowered. Id. The school district returned the

incorrect taxes to the taxpayers. Id. However, this correction in the calculation of assessed

valuation for 1985 resulted in the school district receiving revenues that fell below the revenues

received under the 1984 levy. Id. When setting its tax levy rate for 1986, the school district

increased its levy under section 137.073.3 to recoup revenues it lost in 1985 due to the 1985 levy

being calculated on incorrect property assessments. Id. at 337-38. Critically, in Scholle, the

school district’s increase in the tax levy rate for recoupment never exceeded the tax levy rate

ceiling under section 22(a). Id.

 Here, neither party asserts the District increased its tax levies for 2013, 2014, 2015, 2016,

2017, and 2018 to recoup revenues it was entitled to receive due to clerical errors or corrections

in the calculation or recordation of any assessed valuation from prior years under section

137.073.3. Scholle does not stand for the proposition that a school district may ensure its

revenues stay constant by increasing its tax levies beyond the tax levy ceiling provided in section

22(a) when it experiences a decrease in assessed valuations within its boundaries. The trial

court’s determination to the contrary is erroneous.

 18
 The District violated section 137.073 in setting its tax levies for 2013, 2014, 2015, 2016,

2017, and 2018 by failing to use the calculation that produces the lowest tax levy ceiling, as

required by section 137.073.4(2) and section 137.073.2.

 Point II is granted.

 Point III:
 Taxpayers Are Entitled to a Partial Refund Under Section 137.073.9

 In Point III, Taxpayers argue the trial court erred in determining they were not entitled to

refunds of the unlawful taxes collected by the District in 2013, 2014, 2015, 2016, 2017, and 2018

under section 137.073.9.

 Enforcement of the Hancock Amendment “is subject to the orderly procedures

established by statute.” Green, 13 S.W.3d at 287 (Wolff, J., concurring). “The enforcement of

the right to be free of increases in taxes that the voters do not approve in advance may be

accomplished in [these] two ways”:

 First, taxpayers may seek an injunction to enjoin the collection of a tax until its
 constitutionality is finally determined. Second, if a political subdivision increases
 a tax in violation of article X, section 22(a), and collects that tax prior to a final,
 appellate, judicial opinion approving the collection of the increase without voter
 approval, the constitutional right established by article X, section 22(a), may be
 enforced only by a timely action to seek a refund of the amount of the
 constitutionally-imposed increase.

Id. (alteration in original) (quoting Ring v. Metro. St. Louis Sewer Dist., 969 S.W.2d 716, 718

(Mo. banc 1998)). “[A]n action for property tax refunds must conform to statutory requirements,

and, specifically, the action must be timely.” Id.

 Section 137.073.8 allows a taxpayer who has cause to believe a taxing authority has not

complied with section 137.073 to challenge the tax levy by making a formal complaint with the

prosecuting attorney of the county. If the prosecutor fails to bring an action within ten days of

 19
the complaint’s filing, section 137.073.8 states the taxpayer may bring a class action challenging

the taxing authority’s compliance with section 137.073.

 However, “[t]he civil action contemplated by [section 137.073.8] is only for injunctive

relief.” Id. Section 137.073.9 provides:

 If in any action, including a class action, the court issues an order requiring a
 taxing authority to revise the tax rates as provided in this section or enjoins a
 taxing authority from the collection of a tax because of its failure to revise the
 rate of levy as provided in this section, any taxpayer paying his or her taxes when
 an improper rate is applied has erroneously paid his or her taxes in part, whether
 or not the taxes are paid under protest as provided in section 139.031, RSMo. The
 part of the taxes paid erroneously is the difference in the amount produced by the
 original levy and the amount produced by the revised levy. The township or
 county collector of taxes or the collector of taxes in any city shall refund the
 amount of the tax erroneously paid. The taxing authority refusing to revise the
 rate of levy as provided in this section shall make available to the collector all
 funds necessary to make refunds under this subsection.

(emphasis added). Section 137.073.9 clarifies refunds of taxes erroneously paid are permitted

only if injunctive action was timely instituted. Koehr v. Emmons, 55 S.W.3d 859, 863-64 (Mo.

App. E.D. 2001); Vogt v. Emmons, 158 S.W.3d 243, 249-50 (Mo. App. E.D. 2005). Injunctive

action is timely instituted if the taxpayers’ lawsuit requesting injunctive relief was filed before

the challenged taxes became payable, which is December 31 of the tax year. Green, 13 S.W.3d

at 287 (Wolff, J., concurring).

 Here, Blankenship made a formal complaint with the prosecuting attorney of Franklin

County on November 30, 2017, challenging the District’s 2013, 2014, 2015, 2016, and 2017 tax

levies. The prosecutor failed to bring an action within ten days of November 30, 2017. On

December 22, 2017, Blankenship, individually and on behalf of Taxpayers, filed a Petition

against the District and the Collector of Franklin County requesting the District be enjoined from

collecting taxes using the levies in 2013, 2014, 2015, 2016, and 2017. On October 8, 2018,

Blankenship made another formal complaint with the prosecuting attorney of Franklin County,

 20
challenging the District’s 2018 tax levy. The prosecutor failed to bring an action within ten days

of October 8, 2018. On October 31, 2018, Blankenship, individually and on behalf of

Taxpayers, filed a Second Amended Petition against the District and Collector of Franklin

County requesting the District be enjoined from collecting taxes using the 2018 tax levy in

addition to the levies challenged in the Petition filed on December 22, 2017.

 Because no action requesting injunctive relief regarding the District’s tax levies for 2013,

2014, 2015, or 2016 was brought before December 31 in each of those years, Taxpayers may not

have refunds of the amounts erroneously paid in 2013, 2014, 2015, or 2016 under section

137.073.9.7 Taxpayers cannot seek to enjoin taxes already collected. Koehr, 98 S.W.3d at 584.

However, because a Petition challenging the District’s 2017 tax levy and requesting injunctive

relief was filed before December 31, 2017, and a Second Amended Petition challenging the

District’s 2018 tax levy and requesting injunctive relief was filed before December 31, 2018,

injunctive action was timely instituted regarding the District’s tax levies for 2017 and 2018.

Under section 137.073.9, Taxpayers are entitled to a refund of the taxes they erroneously paid

for 2017 and 2018.

 On remand, we instruct the trial court to calculate the proper refunds due to Taxpayers for

2017 and 2018 under section 137.073.9 in accordance with this opinion.

 Point III is granted in part and denied in part.

 Point IV:
 Taxpayers Are Not Entitled to a Refund Under Section 23 of the Hancock Amendment

 In Point IV, Taxpayers argue the trial court erred in determining they were not entitled to

refunds of the unlawful taxes collected by the District in 2013, 2014, 2015, 2016, 2017, and 2018

under section 23 of the Hancock Amendment.

7
 During oral argument, Taxpayers conceded they are entitled to no refunds under section 137.073.9 for the taxes
erroneously paid in 2013, 2014, 2015, and 2016.

 21
 Even though the District used a higher tax levy in 2013, 2014, 2015, 2016, 2017, and

2018 than that approved by the voters in 2012 in violation of section 22(a), section 23 of the

Hancock Amendment is not a vehicle for Taxpayers to obtain the relief they seek. Section 23 of

the Hancock Amendment provides:

 [A]ny taxpayer ... shall have standing to bring suit ... to enforce the provisions of
 sections 15 through 22, inclusive, of this article and, if the suit is sustained, shall
 receive from the applicable unit of government his costs, including reasonable
 attorneys’ fees incurred in maintaining such suit.

The Missouri Supreme Court has “unequivocally” held section 23 does not, “by itself,

“authorize[] courts to award money damages in the form of refunds (or otherwise) as a remedy

for a political subdivision levying a tax without the prior voter approval required by section

22(a).” Zweig, 412 S.W.3d at 248 (footnote omitted); see also Taylor v. State, 247 S.W.3d 546,

548 (Mo. banc 2008). “The principal relief authorized by section 23 is . . . declaratory and not

remedial.” Zweig, 412 S.W.3d at 244. “By its plain language, the only monetary relief courts

are authorized to give under section 23 is an award of expenses and attorney’s fees.” Id.; Fort

Zumwalt Sch. Dist., 896 S.W.2d at 923.

 Section 23 has not been read by the Missouri Supreme Court to be a consent to suit for

money judgment, as such consent is absent from its plain language and would have to be inferred

or implied. Fort Zumwalt Sch. Dist., 896 S.W.2d at 923. Further, allowing such suits for money

judgment under section 23 would “thwart” one main purpose of the Hancock Amendment, which

“is to limit expenditures by state and local government.” Id. Taxpayers are not entitled to

refunds of the unlawful taxes collected by the District in 2013, 2014, 2015, 2016, 2017, and 2018

under section 23. Statutory authority for the refund of taxes is required. Cmty. Fed. Sav. & Loan

Ass’n v. Dir. of Revenue, 752 S.W.2d 794, 797 (Mo. banc 1988) (“In the absence of statutory

 22
authority, taxes voluntarily, although erroneously paid, . . . cannot be refunded”) (emphasis

added).

 Point IV is denied.

 Point V:
 Refunds Under Section 139.031

 In Point V, Taxpayers argue the trial court erred in determining all class members were

required to comply with section 139.031.1-2 to be entitled to refunds under section 137.073.9,

section 23 of the Hancock Amendment, or section 139.031.1.

 The trial court did not enter the ruling suggested by Taxpayers. Our review of the trial

court’s conclusions of law shows Taxpayers misconstrue the substance of the trial court’s

holding.

 Taxpayers challenge paragraphs 57-59 of the trial court’s judgment, which state:

 57. Mo. Rev. Stat. § 139.031.1 provides the exclusive remedy for taxpayers
 seeking refunds of taxes. B&D Investment Co. v. Schneider, 646 S.W.2d 759,
 763-64 (Mo. 1983) (en banc); Adams v. Friganza, 344 S.W.3d 240, 247-48 (Mo.
 App. E.D. 2011); Metts v. City of Pine Lawn, 84 S.W.3d 106, 109 (Mo. App.
 E.D. 2002). The statutory procedures set out in Section 139.031.1 RSMo. must be
 followed even when the challenge is based on an assertion that the taxes were
 unconstitutionally assessed and collected. Westglen Village Associates v.
 Leachman, 654 S.W.2d 897, 900 (Mo. 1983) (en banc). Because Plaintiff and the
 class members have failed to comply with the mandatory prerequisites of Mo.
 Rev. Stat. § 139.031.1, this section also fails to provide them a basis for the
 claims for refund.

 58. In order to seek a refund under Mo. Rev. Stat. § 139.031.1, a taxpayer must 1)
 pay the protested taxes in full, 2) submit a written statement setting forth the
 specific grounds on which the protest is based, and 3) within 90 days thereafter,
 file a petition against the collector to recover the taxes. Mo. Rev. Stat. §§
 139.031.1 and 139.031.2; Ackerman Buick v. St. Louis County, 771 S.W.2d 343,
 344 n.1 (Mo. 1989) (en banc). Upon receipt of the protested tax payment, the
 collector is statutorily obligated to segregate and withhold the protested funds
 from the taxing authority until the protest is resolved. Id. These requirements
 serve to provide notice to the taxing authority of the taxpayer’s protest, so as to
 protect it against the grave financial hardship that could result if it is forced to
 refund taxes that have already been collected, disbursed to it, and in all likelihood,

 23
 spent. Adams, 344 S.W.3d at 248. “Mandating a refund of [taxes that have
 already been collected and disbursed] could create serious financial problems for
 the taxing authority.” B&D Investment Co., 646 S.W.2d at 762.

 59. Plaintiff and the unnamed class members of the Certified Plaintiff Class have
 failed to comply with these mandatory requirements. Only Plaintiff paid his 2017
 and 2018 taxes under protest, filed a written statement of objection as to those
 taxes with the Franklin County Collector, and filed suit to recover the protested
 taxes within 90 days after they were paid. None of the unnamed class members
 fulfilled these requirements, and Plaintiff failed to do so for his 2013 through
 2016 taxes. As a result, the Franklin County Collector only set aside Plaintiff’s
 2017 and 2018 tax payments into a segregated account, and the District had no
 notice of any other protested taxes. The remainder of the taxes at issue were
 disbursed to the District.

 In these paragraphs of its judgment, the trial court did not hold all class members must

comply with section 139.031.1-2 to be entitled to refunds under section 137.073.9, section 23 of

the Hancock Amendment, or section 139.031.1. Instead, the trial court held all class members

were required to comply with section 139.031.1-2 to be entitled to refunds under section

139.031.1. To the extent Taxpayers appeal the substance of a judgment the trial court did not

make, their arguments are dismissed. Green v. Lake Montowese Ass’n, 387 S.W.3d 413, 416-17

(Mo. App. E.D. 2012).

 To the extent Taxpayers appeal the trial court’s judgment holding all class members were

required to comply with section 139.031.1-2 to be entitled to refunds under section 139.031.1,8

we find the trial court’s conclusion is correct as a matter of law. “Section 139.031.1-4 allows

Missouri taxpayers to pay disputed taxes assessed for their property under protest and seek a

refund of those taxes.” Bd. of Educ. of City of St. Louis v. Daly, 272 S.W.3d 228, 233 (Mo. App.

8
 We note Taxpayers’ Second Amended Petition did not seek refunds of the taxes erroneously collected by the
District for 2013, 2014, 2015, 2016, 2017, and 2018 under section 139.031.1. Rather, Taxpayers’ Second Amended
Petition stated they sought refunds under section 139.031.5. “The provisions of subsections 1 to 4 and subsection 5
of section 139.031 are distinct and mutually exclusive.” Lane v. Lensmeyer, 158 S.W.3d 218, 222 n.7 (Mo. banc
2005). The parties, however, tried the case as if relief under section 139.031.1 was requested by Taxpayers. Thus,
even if the question of whether Taxpayers could obtain refunds under section 139.031.1 was not within the scope of
the pleadings, we treat the issue as if it was raised in the pleadings because it was tried. In re Marriage of Brewer,
592 S.W.2d 529, 532 (Mo. App. S.D. 1979).

 24
E.D. 2008). The procedure for a taxpayer to protest taxes assessed against him or her established

by section 139.031 applies to taxes challenged as violations of the Hancock Amendment. Metts

v. City of Pine Lawn, 84 S.W.3d 106, 109 (Mo. App. S.D. 2002).

 Section 139.031.1 requires that, before any refund will issue for any tax erroneously paid,

“any taxpayer” shall pay the challenged tax under protest by filing a statement with the collector

and submit a written statement setting forth the specific grounds on which the protest is based.

§ 139.031.1 (emphasis added). Section 139.031.2 further provides “every taxpayer protesting

the payment of current taxes under subsection 1 of [section 139.031] shall file suit against the

collector within ninety days in circuit court” and “[i]f any taxpayer so protesting his taxes under

subsection 1 of [section 139.031] shall fail to commence an action in the circuit court for the

recovery of the taxes protested within the time prescribed in this subsection, such protest shall

become null and void and of no effect.” § 139.031.2 (emphasis added).

 Here, it is undisputed Blankenship failed to pay his 2013, 2014, 2015, and 2016 taxes

under protest. “Taxpayers who fail to protest property taxes under [section] 139.031 cannot

obtain refunds.” Metts, 84 S.W.3d at 109. Therefore, Blankenship is not entitled to refunds of

the unlawful taxes collected by the District in those years under section 139.031.1. It is also

undisputed Blankenship paid his 2017 and 2018 taxes under protest, submitted a written

statement explaining the grounds on which his protests were based, and sued within ninety days

of filing his protest. Therefore, Blankenship is entitled to refunds of the unlawful taxes collected

by the District in 2017 and 2018 under section 139.031.1.9

9
 As discussed in Point III, Blankenship is also entitled to refunds of the unlawful taxes collected by the District in
2017 and 2018 under section 137.073.9. Blankenship was free to pursue the recovery of his taxes under both section
139.031 and section 137.073. Ackerman Buick, Inc. v. St. Louis Cty., 771 S.W.2d 343, 345 (Mo. banc 1989)
(“Section 139.031 does not preclude resort to other statutory provisions which provide available routes for the
recovery of taxes”). However, a taxpayer’s recovery of refunds is limited to “the amount of the tax erroneously
paid” under section 137.073.9 and “all or any part of the current taxes paid under protest” under section 139.031.4.
Under either statute, Blankenship may not recover more than the amount of the tax he erroneously paid. See id.

 25
 The parties dispute whether the class members Blankenship represents are also entitled to

refunds of the unlawful taxes collected by the District in 2017 and 2018 under section 139.031.1

by virtue of Blankenship’s compliance with section 139.031.1-2’s requirements. Taxpayers

argue that, because no statute prohibits class actions under section 139.031, refunds may issue

under section 139.031.1 on a class-wide basis so long as the class representative complied with

its requirements. The District argues section 139.031.1 authorizes no such class-wide relief.

 We agree with the District. The Missouri Supreme Court has noted “nothing in section

139.031 authorizes class refunds.” Lane v. Lensmeyer, 158 S.W.3d 218, 222 n.7 (Mo. banc

2005). Instead, sections 139.031.1 and 139.031.2 mandate “any taxpayer” must pay the

challenged taxes under protest and submit a written statement setting forth the grounds for such

protest and “every taxpayer” must sue the collector within ninety days of paying such taxes

under protest. Section 139.031 “must be meticulously followed.” Adcor Realty v. State Tax

Comm’n, 627 S.W.2d 604, 606 (Mo. banc 1982); State ex rel. Nat. Inv. Corp. v. Leachman, 613

S.W.2d 634, 635 (Mo. banc 1981) (holding “explicitly stated” statutory requirements, such as

those included in section 139.031.1, “are to be strictly construed and enforced”); Ford Motor Co.

v. City of Hazelwood, 155 S.W.3d 795, 798 (Mo. App. E.D. 2005) (“Section 139.031 must be

strictly construed and enforced”). Section 139.031, construed strictly, does not authorize class

refunds but only refunds for individual taxpayers who follow its procedures.

 Therefore, the class members Blankenship represents are not entitled to refunds of the

taxes they erroneously paid for 2017 and 2018 under section 139.031.1. The class members

Blankenship represents are only entitled to refunds of the taxes they erroneously paid for 2017

and 2018 under section 137.073.9, as explained in Point III.

 Point V is denied.

 26
 Points VI and VII:
 Taxpayers Are Entitled to Costs and Attorney’s Fees Under Section 23 of the Hancock
 Amendment or Section 137.073.8

 In Points VI and VII, Taxpayers argue the trial court erred in determining they were not

entitled to costs and attorney’s fees under section 23 of the Hancock Amendment or section

137.073.8.

 Section 23 of the Hancock Amendment provides that, if a lawsuit to enforce the Hancock

Amendment under section 23 is sustained, “[a]ny taxpayer . . . shall receive from the applicable

unit of government his costs, including reasonable attorneys’ fees incurred in maintaining such

suit.” Similarly, section 137.073.8 provides, “In any class action brought pursuant to this

section, the court, in addition to the relief requested, shall assess against the taxing authority

found to be in violation of this section the reasonable costs of bringing the action, including

reasonable attorney’s fees[.]” We hold the District violated section 22(a) of the Hancock

Amendment and section 137.073 in setting its tax levies for 2013, 2014, 2015, 2016, 2017, and

2018. The trial court’s holding to the contrary is erroneous. Accordingly, Taxpayers are entitled

to reasonable costs and attorney’s fees incurred pursuing the underlying action under either

section 23 of the Hancock Amendment or section 137.073.8.

 Before submission of this case on appeal, Taxpayers moved this Court to award

attorney’s fees and costs. The motion was taken with the case. “While ‘appellate courts have

the authority to allow and fix the amount of attorney’s fees [and costs] on appeal, we exercise

this power with caution, believing in most cases that the trial court is better equipped to hear

evidence and argument on this issue and determine the reasonableness of the fee requested.’”

Berry v. Volkswagen Grp. of Am., Inc., 397 S.W.3d 425 (Mo. banc 2013) (quoting Rosehill

Gardens, Inc. v. Luttrell, 67 S.W.3d 641, 648 (Mo. App. W.D. 2002)). The motion for attorney’s

 27
fees on appeal is granted. On remand, we instruct the trial court to calculate and include the

reasonable costs and attorney’s fees Taxpayers are entitled to on appeal.

 Points VI and VII are granted.

 Conclusion

 The judgment of the trial court is reversed. We remand to the trial court with instructions

to make specific findings and calculate the appropriate refunds due to Taxpayers for 2017 and

2018 under section 137.073.9 and to determine the reasonable costs and attorney’s fees incurred

by Taxpayers in maintaining this lawsuit in the trial court and on appeal under section 23 of the

Hancock Amendment or section 137.073.8.

 _______________________________
 Philip M. Hess, Judge

Gary M. Gaertner, Jr., P.J. and
Michael E. Gardner, J. concur.

 28